*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0139P (6th Cir.)
File Name: 04a0139p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

LARNCE HAMBY,
    *Plaintiff-Appellee,*

BETTY OOTEN,
  *Intervenor Plaintiff-Appellee,*

NORA HYSLOPE,
  *Intervenor Plaintiff-Appellee,*

    *v.*

C. WARREN NEEL,
Commissioner, Tennessee
Department of Finance and
Administration; MARK
REYNOLDS, Deputy
Commissioner, Bureau of
TennCare,
    *Defendants-Appellants.*

Nos. 01-5653/5930

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 98-01023—William J. Haynes, Jr., District Judge.

Argued: January 31, 2003

---

Decided and Filed: May 17, 2004

Before: BATCHELDER, MOORE, and CLAY, Circuit
Judges.

———————————

## COUNSEL

**ARGUED:** Sue A. Sheldon, OFFICE OF THE ATTORNEY
GENERAL, Nashville, Tennessee, for Appellants. Lenny L.
Croce, RURAL LEGAL SERVICES OF TENNESSEE, Oak
Ridge, Tennessee, for Appellees. **ON BRIEF:** Sue A.
Sheldon, OFFICE OF THE ATTORNEY GENERAL,
Nashville, Tennessee, for Appellants. Lenny L. Croce,
RURAL LEGAL SERVICES OF TENNESSEE, Oak Ridge,
Tennessee, for Appellees.

CLAY, J., delivered the opinion of the court, in which
MOORE, J., joined. BATCHELDER, J. (pp. 27-34),
delivered a separate dissenting opinion.

———————————

## OPINION

———————————

CLAY, Circuit Judge. This is a consolidated appeal. In
Case No. 01-5653, Defendants, C. Warren Neel, the
Commissioner of the Tennessee Department of Finance and
Administration, and Mark Reynolds, the Deputy
Commissioner of the Bureau of Tennessee's Medicaid
Demonstration Project ("TennCare"), appeal from the district
court's order entered on April 27, 2001, granting summary
judgment in favor of Plaintiffs, Larnce Hamby, Betty Ooten,
and Nora Hyslope. In Case No. 01-5930, Defendants appeal
from the district court's order entered June 8, 2001, denying
Defendants' motion to stay the district court's April 17, 2001

order. For the reasons set forth below, we **AFFIRM** the district court's orders.

### STATEMENT OF FACTS

#### *Procedural History*

Plaintiffs brought this action under 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution, challenging the TennCare program's handling of their applications for coverage under the program when Plaintiffs were denied coverage.

Plaintiff Hamby commenced this action in October of 1998. Plaintiffs Ooten and Hyslope requested and were granted permission to intervene in the action in 1998 and 2000, respectively. Thereafter, Plaintiffs and Defendants filed cross-motions for partial summary judgment. On April 13, 2001, the district court issued an order granting Plaintiffs' motion for partial summary judgment, thereby awarding TennCare benefits to Plaintiffs from the date of their original applications, and denying Defendants' motion for partial summary judgment. The district court modified its order on April 27, 2001 and May 10, 2001, changing a sentence in the order and providing a correct citation to a regulation.

Defendants timely filed a notice of appeal on May 11, 2001 (Case No. 01-5653). Pending appeal, Defendants filed a motion to stay the district court's April 27, 2001 order. By order entered on June 8, 2001, the district court denied the motion to stay. On July 2, 2001, Defendants moved this Court for a stay pending appeal. This Court denied the motion to stay on August 9, 2001, insofar as the motion sought a stay of an injunction requiring Defendants to approve benefits under the TennCare program to Plaintiffs as of the date of their first applications. However, this Court granted a stay pending appeal of all other aspects of the district court's April 17, 2001 order.

On July 5, 2001, Defendants timely filed a notice of appeal from the district court's June 8, 2001 order (Case No. 01-5930). This Court consolidated the two appeals on July 26, 2001, and conducted oral argument on January 31, 2003. Thereafter, on February 24, 2003, Plaintiffs filed a motion to dismiss the appeals for lack of jurisdiction. By order issued on April 11, 2003, this Court denied the motion to dismiss.

#### *Facts*

#### A.   **TennCare Enrollment and Eligibility**

The Tennessee Department of Health ("TDH") administers the TennCare program for the State of Tennessee. TENN. CODE ANN. § 71-5-104. The TennCare program is a federal waiver plan under the Medicaid Act approved by the Secretary of Health and Human Services under 42 U.S.C. § 1315. The waiver eliminated certain requirements for eligibility for medical benefits under the Medicaid Act.

Under the TennCare program, Tennessee provides medical assistance to eligible persons through managed care organizations rather than through traditional fee-for-service arrangements with providers. TennCare coverage is extended to three groups of individuals: (1) existing Medicaid beneficiaries and those who meet Medicaid's financial and/or medical eligibility requirements; (2) the uninsured; and (3) the uninsurable. TENN. COMP. R. & REGS. 1200-13-12-.02(2) (a) 2 and 3. The TennCare regulations define uninsured persons as:

> [A]ny person[s] who as of March 1, 1993 . . . did not have coverage under an individual health insurance policy or who did not have (either directly or through a family member) coverage under, or access to, employer-sponsored health insurance or to another government plan, and continues to lack this access . . . .

TENN. COMP. R. & REGS. 1200-13-12-.01(36). Persons eligible for TennCare coverage as uninsureds can enroll during periods of open enrollment. TENN. COMP. R. & REGS. 1200-13-13-.03(1)(d). The open enrollment period continues until the program reaches 85% of the maximum enrollment cap for that year. TENN. COMP. R. & REGS. 1200-13-13-.03(1)(d).

The TennCare regulations define uninsurable persons as "[A]ny person[s] who are unable, because of an existing medical condition, to purchase health insurance, but who meets the guidelines of the [program]." TENN. COMP. R. & REGS. 1200-13-12.-.02(35). Persons eligible for TennCare coverage as uninsurables can enroll at any time. TENN. COMP. R. & REGS. 1200-13-12-.03(1) (b) 2.

To enroll in the TennCare program, an applicant must answer a series of written questions and submit the completed forms to the TennCare Bureau. The same application is used for both uninsured and uninsurable applicants. Applicants are not required to reflect on the application whether they are seeking medical insurance as an uninsured or uninsurable person.

The TennCare regulations state that enrollment in the program is complete when the "person eligible for enrollment has selected a managed care plan from those available in the area where the person resides, the application has been approved by the Bureau of TennCare, and when any applicable premiums have been paid." TENN. COMP. R. & REGS. 1200-13-12-.03(1). The regulations further provide that "[e]nrollment shall be deemed complete retroactive to the date of the original application, if that application is approved." TENN. COMP. R. & REGS. 1200-13-12-.01(1). This is consistent with the Medicaid regulations and waiver that require approval of medicaid coverage up to three months from the date of the approved application.

However, if an application is denied, the TennCare regulations require that written notice to the applicant include the following:

1.   An explanation of the reasons for the Bureau's actions, including a brief statement of the factual basis and the rule or contract provision relied upon by the Bureau;
2.   An explanation of the circumstances under which the TennCare applicant can request an appeal; and
3.   An explanation of the TennCare applicant's right to submit documents or other information in support of a request for appeal.

TENN. COMP. R. & REGS. 1200-13-12-.11(3)(b). Furthermore, an applicant may appeal the denial of TennCare coverage within 30 days after the date of the notice of denial. TENN. COMP. R. & REGS. 1200-13-12-.11 (3) (a).

**B.   Plaintiff Hamby's Application Process**

In 1995, Hamby, then sixty-one years old, was treated for skin cancer and testicular cancer. Hamby applied for TennCare coverage in December of 1995. Because Hamby had not yet received a response from the TennCare Bureau regarding his December 1995 application, Hamby completed and mailed a second application to the Bureau in February of 1996.

On his applications, Hamby stated that he had not been turned down for a health insurance policy other than Medicaid or Medicare. The TennCare Bureau denied both of Hamby's applications. The TennCare Bureau sent Hamby a written notice, dated March 20, 1996, which provided in part:

THIS IS WHY WE THINK YOU DO NOT QUALIFY FOR TENNCARE.

Your [February 1996] application was received after the end of an open enrollment period.
. . . .

If you or someone in your family has lost or cannot get health insurance because of a medical condition, fill in the attached appeal form and return it to us. You and your family members may qualify for TennCare because you are uninsurable. Uninsurable people can enroll in TennCare at any time.
. . . .

There are three ways to qualify for TennCare. We only checked one way. You may also be eligible if you are uninsurable (you lose or cannot get health insurance because of a medical condition you have) or if you qualify for Medicaid.
. . . .

REMEMBER! Even if you are not eligible for TennCare or Medicaid . . . you can apply later if the facts about you change.

(J.A. at 211-12.)

In June of 1996, Hamby sent a third application to the TennCare Bureau, in which he indicated that he had been denied health insurance. Hamby's third application was received by the TennCare Bureau on June 12, 1996. The TennCare Bureau later informed Hamby that he was enrolled in the program effective June 12, 1996.

In June of 1997, Hamby filed an appeal and declaratory ruling requesting that his enrollment relate back to the date of his original application in December of 1995. On June 12, 1998, the Administrative Law Judge ("the ALJ") issued an order finding Hamby eligible for TennCare coverage based on his second application submitted in February of 1996. The ALJ reasoned that the Commissioner was required to open

TennCare enrollment during the first three months of each calender year until enrollment reached 95% of the enrollment cap applicable for that year, and that Hamby had filed his February 1996 application during the open enrollment period of that year, when the total enrollment was less than 85% of the maximum enrollment of 1.5 million.

On September 4, 1998, the Commissioner's designee reversed the ALJ's order. The designee concluded that Hamby's enrollment date should have been based on his third application of June 12, 1996 because Hamby responded on his December 4, 1995 and February 15, 1996 applications that he had never been denied other medical insurance. The designee also concluded that Hamby's first two applications were submitted after enrollment for coverage as an uninsured person was closed. Hamby did not appeal or request for a hearing concerning the denial of his December 1995 and February 1996 applications.

## C. Plaintiff Ooten's Application Process

On July 2, 1998, Ooten, then forty-nine years old, had a heart attack and was taken to Roane County Medical Center in Harriman, Tennessee. While in emergency care, Ooten's daughter completed a TennCare application for Ooten and submitted it to the hospital. After her release from the hospital, Ooten called the TennCare Bureau to inquire about her application. The TennCare Bureau informed Ooten that her application had been denied and advised her to submit a new application together with a denial letter from an insurance company. The TennCare Bureau later sent Ooten written notice, dated July 23, 1998, which provided in part:

THIS IS WHO IN YOUR FAMILY DOES NOT QUALIFY AND WHY WE THINK THEY DO NOT QUALIFY:
Betty S. Ooten    ###-##-#### [Social Security Number]
This person(s) denied for the reason listed below.

Your application was received during a period of closed enrollment.

. . . .

YOU HAVE THE RIGHT TO REQUEST A REASSESSMENT

Do you think we are wrong for turning you down for TennCare?

You have the right to ask for a reassessment to tell us why.

(J.A. at 499.)

On July 21, 1998, Ooten filed another application with a denial letter from a private insurance company. This application was received by the TennCare Bureau on July 24, 1998. The TennCare Bureau enrolled Ooten in the program effective July 24, 1998. On July 28, 1998, Ooten requested a reassessment of her original application and informed the TennCare Bureau that she could not get medical insurance because she had a preexisting medical condition; a 70% blockage in her arteries. Ooten's request for reassessment was referred to a formal hearing.

At a hearing held on February 3, 1999, Dena Bost, an officer of the TennCare Bureau, testified as follows on direct examination:

Q. Can you explain why TennCare denied the July 2nd application?
A. The July 2nd application did not indicate that Ms. Ooten had been turned down for other insurance, and there was no attachment indicating that either.
Q. Why did TennCare approve the July 24th application?
A. A denial letter from an insurance company denying her coverage on the basis of her medical condition was attached to that application, and she indicated that she had been denied.

(J.A. at 609.) On cross-examination, Bost conceded that a person can have an existing medical condition that they know makes them uninsurable and cited personal circumstances. Bost also conceded that applicants are not asked if they are unable, because of an existing condition, to obtain health insurance. Bost testified that applicants may respond differently to the question "have you been denied insurance?" if they were asked about existing medical conditions.

The ALJ issued an order on May 3, 1999, denying Ooten's request that her date of eligibility relate back to the date of her original application. Ooten filed a petition for appeal. As of the date of this appeal, Defendants had not yet ruled on Ooten's administrative appeal.

### D. Plaintiff Hyslope's Application Process

Hyslope, suffering from diabetes, submitted an application for TennCare coverage on May 14, 1999. Hyslope indicated in her application that she had not been denied health insurance. The TennCare Bureau denied Hyslope's application because it was received during a period of closed enrollment. The TennCare Bureau sent Hyslope written notice dated June 9, 2000, which was identical to the written notice sent to Ooten.

Thereafter, on June 12, 1999, Hyslope requested reassessment of her denied application. On July 22, 1999, the TennCare Bureau affirmed the denial of Hyslope's application. The written notice provided in part:

We want you to know that it is still possible that you are eligible for TennCare.
Other ways you may be able to get TennCare:
1) . . . .

2) . . . .

3) Apply for TennCare *again* if you cannot get health insurance because of health problems.  Include an insurance company letter which states a medical reason why you cannot get health insurance . . . . If the letter is from an insurance agent, it must be on the agent's letterhead.  It must be dated within the last 12 months prior to your TennCare application.

(J.A. at 794.) (emphasis in original).

Hyslope requested a hearing on July 28, 1999.  While awaiting a hearing, Hyslope sent a second application, dated August 23, 1999, to the TennCare Bureau.  In the application, Hyslope responded "yes" to the question "have you been denied health insurance?"  The TennCare Bureau approved Hyslope's second application effective August 30, 1999.  On November 4, 1999, a telephone hearing was held.  Hyslope was not represented by counsel at the hearing.

The ALJ affirmed the denial of Hyslope's first application on November 8, 1999, finding that Hyslope did not submit an insurance denial letter with the application.  On November 10, 1999, Hyslope requested a reconsideration of the denial of her first application.  Hyslope stated that she had to go to the hospital due to an ulceration on her toe and that she almost lost her foot due to diabetes.  The Commissioner's designee affirmed the denial of Hyslope's first application on May 2, 2000.

## DISCUSSION

### *Standard of Review*

We review a district court's grant of summary judgment *de novo*. *Johnson v. Econ. Dev. Corp.,* 241 F.3d 501, 509 (6th Cir. 2001).  A moving party is entitled to summary judgment as a matter of law when there are no genuine issues of material fact.  *Id*.; Fed. R. Civ. P. 56(c).  When determining a summary judgment motion,  we view the evidence and draw

all reasonable inferences in the light most favorable to the non-moving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000).  Nevertheless, "[t]he moving party need not support its motion with evidence disproving the nonmoving party's claim, but need only show that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Moreover, constitutional questions are questions of law subject to *de novo* review.  *Johnson*, 241 F.3d at 509.

### *Analysis*

Plaintiffs contend that TennCare's eligibility and enrollment process violates their Due Process rights under the Fourteenth Amendment because the process does not provide adequate notice that,  upon applying, applicants must identify themselves as either  uninsured or uninsurable persons, nor does the process express that such a distinction is determinative of their eligibility for coverage.  The Plaintiffs also contend that they were denied a meaningful hearing, in violation of their Due Process rights, because of Defendants' policy to determine a claimant's "uninsurable" status by focusing upon the receipt of an insurance company's letter of rejection rather than the Plaintiffs' medical condition.

Defendants argue that Plaintiffs have no legitimate claim of entitlement to have their denied TennCare applications treated as applications for coverage as uninsurable individuals since Plaintiffs did not indicate on their denied applications that they were uninsurable or were applying as uninsurables. Defendants contend that because Plaintiffs did not submit insurance denial letters, the TennCare Bureau had no indication whatsoever that Plaintiffs had existing medical conditions that rendered them uninsurable. Defendants assert that Plaintiffs did not inform the TennCare Bureau of their existing medical conditions until they submitted subsequent applications  which  the  TennCare  Bureau  approved. Defendants therefore argue that Plaintiffs are entitled to TennCare coverage as of the date they submitted approvable

applications and not the date they actually became uninsurable. We disagree with Defendants for the following reasons.

## I. Due Process Rights

The district court concluded that "Plaintiffs have a 'substantive interest' in TennCare or Medicaid benefits and if they meet the program's requirements, each of the Plaintiffs has 'a legitimate claim of entitlement' that gives rise to procedural and substantive due process rights."

It is well established that the requirements of substantive and procedural due process apply to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Bd. of Regents v. Roth*, 408 U.S. 564, 571 (1972) (holding that a professor did not possess a property interest in his teaching position where it was subject to a limited term appointment such that no legitimate claim to re-employment existed). The United States Supreme Court established a standard, in *Roth*, for determining whether a person has a property interest:

The Fourteenth Amendment's procedural protection of property is a safeguard of the security interests that a person has already acquired in specific benefits. These interests–property interests–may take many forms.
· · · ·

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.
· · · ·

Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source

such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.* at 576. Thus, the first issue we must decide is whether Plaintiffs have a legitimate claim of entitlement to have their denied TennCare applications treated as applications for coverage as uninsurable individuals such that due process requirements are invoked. *See id.*

Plaintiffs, like other Tennessee citizens, have a right to apply for and enroll in the TennCare program as uninsurable persons at any time. *See* TENN. COMP. R. & REGS. 1200-13-12-.03(1)(b). The TennCare regulations provide that enrollment in the TennCare program is complete when the "person eligible for enrollment has selected a managed care plan from those available in the area where the person resides, the application has been approved by the Bureau of TennCare, and when any applicable premiums have been paid." TENN. COMP. R. & REGS. 1200-13-12-.03(1). The TennCare regulations further provide that "[e]nrollment shall be deemed complete retroactive to the date of the original application, if that application is approved." TENN. COMP. R. & REGS. 1200-13-12-.03(1). Finally, TennCare non-Medicaid applicants, if denied, "will be given an opportunity to have an administrative hearing before the Commissioner regarding the denial of their applications." (J.A. at 583.) Unsuccessful TennCare applicants must be notified in writing, which must contain: "(1) [a]n explanation of the reasons of the Bureau's actions, including a brief statement of the factual basis or the rule or contract provision relied upon by the Bureau; (2) [a]n explanation of the circumstances under which the TennCare applicant can request an appeal; (3)[a]n explanation of the TennCare applicant's right to submit documents or other information in support of a request for appeal." TENN. COMP. R. & REG. 1200-13-12-.11(3)(b).

Both the Supreme Court and this Court, have analyzed various scenarios that involve a legitimate claim of

entitlement, giving rise to a property interest. *Roth*, 408 U.S. at 576-79; *Flatford v. Chater*, 93 F.3d 1296, 1304 (6th Cir. 1996); *Banks v. Block*, 700 F.2d 292, 296-297 (6th Cir. 1983). These cases have been instructive to this Court in determining what constitutes a property interest warranting due process scrutiny, and what does not.

In *Roth*, the Supreme Court rejected the plaintiff's claim holding that he had no property interest in re-employment, but merely a unilateral expectation, which would not constitute a legitimate claim of entitlement rising to the level of a protected constitutional right. 408 U.S. at 578. The Court stated that the limited "terms of respondent's appointment [as a professor] secured absolutely no interest in re-employment for the next year." *Id.* The Court compared this claim to that of a welfare recipient's legitimate claim of continuous entitlement to his or her welfare benefits for which they had not yet shown eligibility, but were entitled to do so. *Id.* at 577 (citing *Goldberg v. Kelly*, 397 U.S. 254 (1970)).

This Court, in *Banks*, used the Supreme Court's determination in *Roth*, as instructive guidance in determining the property interest in a plaintiff's expectancy of continuous receipt of food stamp assistance. 700 F.2d at 296. We stated that *Roth* was instructive in two respects. *Id.* First, this Court held that the plaintiff's "unilateral expectancy in the continuous receipt of food stamps is not enough to create a constitutionally protected interest," because the Food Stamp Act's explicit terms did not "justify a reasonable expectancy of entitlement" beyond the "expiration of the assigned certification period." *Id.* at 292-297. In *Banks*, the Food Stamp benefit recipients were "eligible for only a limited 'certification period,' defined as the 'period for which households shall be eligible to receive authorization cards.'" *Id.* at 294 (quoting 7 U.S.C. § 2012(c)). *Banks* differs from *Goldberg* in this respect; whereas *Goldberg*'s continuous welfare benefit receipt was a legitimate claim of entitlement, the limited nature of *Banks'* Food Stamp awards was merely a unilateral expectation.

Second, we were guided by *Roth*'s holding that "property interests are created and their dimensions are defined by an independent source," meaning that the determination of the existence of a property right protected by due process is controlled by the statute creating and defining that right. *Id.*; *see also Goldberg*, 397 U.S. at 254. Therefore, this Court held in *Banks* that the expectancy of entitlement to a continuous receipt of food stamps was an abstract, unilateral one, and would not rise to the level of a property interest, due to the Food Stamp Act's limited certification period of eligibility, much like the one-year teaching contract in *Roth*, which established no property interest beyond the term of the assigned period. *Banks*, 700 F.2d at 297.[1]

With *Roth*'s property interest claim of re-employment subject to a limited and defined employment contract, and *Bank*'s food stamp recipient's property interest claim of continuous benefits subject to a limited certification period, the difference between the denial of due process rights in those two instances and the affirmation of a welfare recipient's property interest in *Goldberg*, lies in the continuity of entitlement. *Id.* In *Goldberg*, welfare recipients challenged existing aid termination procedures, where under the statute involved, recipients were not allowed to appear and present evidence prior to termination of their supposedly continuous welfare benefits. 397 U.S. at 254. The Supreme Court held that such a procedure violated due process

---

[1] Contrary to the dissent's analysis, a property interest is neither predicated upon whether an individual has "earned" the benefits in question, nor upon the existence an individual's contribution towards that benefit. Instead, the Supreme Court has made clear that the rights bestowed upon individuals with legitimate property interests are defined by the language of intent found in the federal or state statute creating such benefits, to then aid the particular plaintiff in question. *Atkins v. Parker*, 472 U.S. 115, 128, 105 S.Ct 2520 (1985) (reiterating the Court's determination that "[f]ood- stamp benefits, like the welfare benefits at issue in *Goldberg v. Kelly*, [], 'are a matter of statutory entitlement for the persons qualified to receive them.'") (internal citations omitted).

concepts since recipients were entitled to benefits, on a continuous basis, so long as they remained eligible. *Id.*

Since TennCare is a waiver created under the Medicaid Act, 42 U.S.C. § 1315, medical assistance to "uninsured" and "uninsurable" individuals is partially federally funded. The Medicaid Act does not subject its recipients to a limited duration of services so long as the eligibility requirements are met; and if challenging a discontinuance, up until the exhaustion of all appeals. 42 C.F.R. §§ 431.230(a) and 431.232(d). Furthermore, this Court has previously held that a social security claimant has a property interest in benefits for which he or she hopes to qualify. *Flatford,* 93 F.3d at1304 (based on the holding in *Richardson v. Perales*, 402 U.S. 389, 398 (1971), in which the Court accepted the proposition that petitioner's claim to benefits gave him a protectable property interest). Since Medicaid is a program established by Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.*, we find that Plaintiffs likewise have a property interest in the TennCare coverage for which they hope to qualify. *Id.*[2]

Based solely on Plaintiffs' negative responses to the question "have you been denied health insurance" and their failure to submit insurance denial letters with their original applications, the TennCare Bureau presumed that Plaintiffs applied for coverage as uninsured persons only, and that Plaintiffs did not have an existing medical condition that prevented them from obtaining health insurance elsewhere.

---

[2]In *Gonzaga University v. Doe*, the Supreme Court in holding that a plaintiff may bring a private cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" under 42 U.S.C. § 1983, found that the determination of a private plaintiff's private rights simply require a determination as to whether or not Congress intended to confer individual rights upon a class of beneficiaries. 536 U.S. 273, 285-87 (2002); *see also California v. Sierra Club*, 451 U.S. 287, 294 (1981) (determining whether or not a statute "confer[s] rights on a particular class of persons").

Moreover, Defendants do not even contend that Plaintiffs were not uninsurable persons at the time of their original applications. Rather, Defendants contend that because Plaintiffs did not submit insurance denial letters with their original applications, Defendants properly denied Plaintiffs' claims of entitlement to TennCare coverage. However, because Defendants' applications did not inform Plaintiffs of this presumption and because none of Defendants' regulations explaining uninsurable eligibility criteria stated that an insurance denial letter must be submitted with the application, Plaintiffs were justified in believing their original applications would be considered in light of the relevant laws and regulations that would grant Plaintiffs medical coverage provided they were eligible. Therefore, given Plaintiffs' eligibility, we hold that Plaintiffs have a legitimate claim of entitlement to TennCare coverage as of the date of their original applications.

## II.   Procedural Due Process

Additionally, it is well-established that a possessory interest in property invokes procedural due  process, which would require adequate notice and a meaningful hearing prior to any attempt to deprive the interest holder of any rights. *Thomas v. Cohen,* 304 F.3d 563,576 (6th Cir. 2002) (citing *Fuentes v. Shevin,* 407 U.S. 67, 87 (1972)); *see also Mathews v. Eldridge*, 424 U.S. 319 (1976) (holding that a claim of entitlement to social security benefits triggers due process protection).

### A.   Adequate Notice

The district court concluded that Defendants' notices "did not inform Plaintiffs that they could offer proof of an existing condition to qualify as uninsurable, a basic element of this status under TennCare rules" or "that a second application will undisputably result in a loss of any benefits under their first application."

The Supreme Court's standard applied to a notice inquiry when establishing the constitutionality of a process which may be determinative of the finality of parties' rights requires that "notice [be] reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Trust Co.*, 339 U.S. 306, 314 (1950). The Supreme Court further clarified the standard for adequate notice in *Goldberg*. 397 U.S. at 268 (requiring that notice be reasonably calculated to inform the recipient of the action to be taken and an "effective opportunity to be heard").

Defendants argue that the TennCare Bureau provided Plaintiffs with adequate written notices that (1) their applications were denied because the applications were received during a period of closed enrollment; (2) they had a right to appeal and seek assistance in appealing; and (3) they had a right to request a hearing within 30 days from the date of the notices. Defendants point out that the forms necessary for appealing were included with the notices.

We find that although Defendants' notices adequately informed Plaintiffs of TennCare's denial of their applications, the notices failed to inform Plaintiffs that (1) their applications were denied because they were not considered uninsurable persons; (2) their applications were rejected because the applications were incomplete due to a lack of proof of a previous insurance denial; (3) if an appeal of a denied application was not pursued, applicants would be barred from a claim of benefits originating from the date of their original applications; and (4) if applicants did submit new applications with insurance denial letters, the second claim would cut off eligibility based on the first applications. Because Defendants failed to include such information in the notices, Plaintiffs were not adequately advised of the reasons for denial of their applications, their right to appeal, the existence of a presumption that Plaintiffs did not apply for

coverage as uninsurable persons, and the consequences of not appealing and filing new applications.

In *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990), the Ninth Circuit reviewed the sufficiency of notices by the Secretary of Health and Human Services (the "HHS") concerning denial of applications for social security disability benefits. The HHS's initial notices of denial provided:

> If you believe that this determination is not correct, you may request that your case be reexamined. If you want this reconsideration, you must request it no later than 60 days from the date you receive this notice. You may make your request through any Social Security office. If additional evidence is available, you should submit it with your request. Please read the enclosed leaflet for a full explanation of your right to question the determination made in your claim. If you do not request reconsideration of your case within the prescribed time period, you still have the right to file another application at any time.

*Id.* The Ninth Circuit held that the HHS's notices violated a claimant's right to procedural due process because the notices did not "clearly indicate that if no request for reconsideration is made, the determination is final." *Id.* The Ninth Circuit reasoned:

> Requiring notices to accurately state how a claimant might appeal an initial decision does not impose a significant financial or administrative burden on the Secretary . . . . Moreover, the form of the notice[s] used here is sufficiently misleading that it introduces a high risk of error into the disability decisionmaking process . . . . One of the fundamental requirements of procedural due process is that a notice must be reasonably calculated to afford parties their right to present objections.

*Id.*

This Court, in *Day v. Shalala*, has followed the Ninth Circuit's views regarding the sufficiency of notice. 23 F.3d 1052, 1066 (6th Cir. 1994) (stating that "[w]e join the Ninth Circuit in finding this particular notice form . . . inadequate). In *Day*, the notice of an applicant's denial was similar to that of *Gonzalez*. *Id.* at 1065-66. Plaintiffs argued that the denial of a disability benefits notice and the accompanying explanatory leaflet failed to make clear the crucial distinction between appealing a determination and reapplying for benefits. *Id.* The Court agreed that a claimant who reapplied rather than appealed might encounter limitations on the payment of retroactive benefits if eventually approved, which would be calculated from the date of the new application rather than the date of the initial, unappealed one. *Id.*

In the instant case, Plaintiffs argued that Defendants' notification attempts violated due process in two separate ways. First, TennCare's denial notices failed to advise applicants of its reasons for denial and of their right to appeal. There is no mention of an applicant's status as an "uninsurable applicant," when the applicant is issued a denial. All three Plaintiffs received denial letters from their original applications stating that they failed to enroll within the open enrollment period, which is a requirement for "uninsured" applicants only. Since there was no section of the application itself that required an applicant to specify under which status they wished to enroll, all applications that did not have an insurance letter attached indicating a recent denial, or an answer in the affirmative as to whether or not they have previously "been denied insurance," were categorically denied. Once Plaintiffs eventually sent a previous insurance letter indicating a denial, they were approved; however, the benefits were not retroactive to the date of the first application. Applicants eligible for TennCare's benefit were not adequately informed as to how to fully receive the benefits to which they were entitled, at the time they were entitled to them, nor were they fully apprised of the reasons for denial as "uninsurable" applicants.

Second, the denial notices did not advise the applicants of the consequences of not appealing and filing new applications. Again, all three Plaintiffs were told to re-apply to TennCare upon receiving their denial letters, instead of appealing. There was no notice given that a new application would cut off eligibility for the benefits requested by Plaintiffs' first applications.

Like the notices in *Gonzalez* and *Day*, we find the notices here to be constitutionally inadequate inasmuch as they failed to adequately advise Plaintiffs of their rights to properly apply as "uninsurable" persons, to be fully informed as to why they were denied as "uninsurable" applicants, and not merely "uninsured" applicants, and to the consequences of re-applying after a denial instead of appealling such decisions. We therefore hold that Plaintiffs were given constitutionally inadequate notices in violation of procedural due process.

**B.   Meaningful Hearing**

The district court concluded that Plaintiffs "were not allowed to show an existing medical condition that makes them unable to obtain health insurance."

Defendants argue that Plaintiffs were not denied meaningful hearings because they were represented by counsel, obtained significant discovery from Defendants, and were given the opportunity to raise legal challenges to the TennCare coverage eligibility criteria which resulted in the denial of their applications. We disagree.

Although Plaintiffs timely appealed the denial of their first applications, the TennCare Bureau continued to deny Plaintiffs coverage because Plaintiffs failed to indicate on their applications that they had been denied health insurance and failed to attach insurance denial letters to their applications. When the TennCare Bureau received Plaintiffs' subsequent applications with attached insurance denial letters, it treated the applications as separate applications for

coverage as uninsurable individuals. Plaintiffs' subsequent applications, filed before their requests for reassessment, were ignored by the TennCare Bureau for purposes of reassessing their first applications. In sum, because Plaintiffs stated on their first applications that they had not previously been denied health insurance, Defendants disallowed them from demonstrating at a hearing that they had existing medical conditions that made them unable to obtain health insurance, thus evidencing their "uninsurable" status, before denying coverage under the original application. *See Friedrich v. Sec'y Health & Human Servs*., 894 F.2d 829, 837 (6th Cir. 1990) (finding that the touchstone of procedural due process is the fundamental requirement that an individual be given the opportunity to be heard in a meaningful manner). We therefore hold that Plaintiffs were denied a meaningful hearing in violation of procedural due process.

The dissent's dismissive suggestions that a ruling in Plaintiffs' favor would make a constitutional issue out of every bureaucracy's faulty paperwork, is only partly true. Because statutory language bestows legitimate rights upon an individual, and those rights are entitled to procedural due process, only those bureaucracies which engage in practices that violate an individual's rights, procedurally or otherwise, will have themselves created a constitutional problem.

## III. Constitutionality of Defendants' Irrebuttable Presumption

The district court concluded that Defendants' policy and practice of requiring an insurance denial letter to demonstrate eligibility for TennCare coverage as an uninsurable person constitutes an unconstitutional irrebuttable presumption.

Defendants argue that the district court's conclusion is erroneous because *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632 (1974), was the last line of cases in which the Supreme Court ventured into the irrebuttable presumption analysis. Shortly after its decision in *Cleveland Bd. of Educ.*,

the Supreme Court made it clear that heightened scrutiny of a statute could not be triggered by merely asserting a claim that the challenged statute contained an irrebuttable presumption. *See Weinberger v. Salfi*, 422 U.S. 749, 777 (1975)).

In *Weinberger*, the Court reviewed the Social Security Administration's duration-of-relationship requirement that irrebuttably presumed that if a marriage did not precede the wage earner's death by nine months, the marriage was entered into for the purpose of securing Social Security benefits. The Court upheld the requirement, finding that "the Due Process Clause can be thought to impose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification." *Id*. at 768. The Court explained that the plaintiffs' "only constitutional claim is that the test they cannot meet is not so rationally related to a legitimate legislative objective that it can be used to deprive them of benefits available to those who do satisfy that test." *Id*. at 772. The Court reasoned that the irrebuttable presumption analysis was inappropriate because the plaintiffs' noncontractual claim to receive funds from the public treasury did not deserve heightened constitutional protection. *Id*.

In *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 534 (6th Cir. 1981), we recognized that the irrebuttable presumption analysis is inapplicable to challenges to aspects of social welfare programs. To challenge the constitutionality of Defendants' alleged presumption, Plaintiffs must prove that Defendants' presumption is not rationally related to a legitimate state objective. *Id*.; *see also Weinberger*, 422 U.S. at 772.[3]

---

[3] The Court in *Kirk* recognized that no irrebuttable presumption exists where the plaintiffs have the opportunity to present the evidence upon which the ultimate decision is derived. Nevertheless, the Court goes on to say that absent proof of a failure to present evidence, a plaintiff's "only constitutional claim is that the test they cannot meet is not so rationally related to a legitimate legislative objective that it can be used to deprive

Here, Defendants argue that their presumption that Plaintiffs did not apply for TennCare coverage as uninsurable persons because they responded "no" to the question "have you been denied health insurance?" and because they had failed to attach insurance denial letters to their applications is rationally related to the legitimate state goals of (1) extending medical benefits to those persons most in need of them; (2) verifying that applicants are unable to purchase health insurance due to existing medical conditions; and (3) discouraging health insurance carriers from cost-shifting their enrollees to the publicly-funded TennCare program.

We find that Defendants' presumption is not rationally related to legitimate state goals because applicants, who have not been previously refused health insurance but have existing medical conditions that make them unable to obtain health insurance, will be excluded from TennCare coverage simply because they provided a negative response to the question "have you been denied health insurance?" A negative response to that question is not conclusive of an applicant's status and should not be determinative of their approval or disapproval. The apparent justification for Defendants' presumption is administrative convenience. By asking "have you been denied health insurance," Defendants seek to eliminate the need for an individualized determination which may be more time consuming and expensive. However, Defendants' "interest in administrative ease and certainty cannot, in and of itself, save the conclusive presumption from

---

them of benefits available to those who do satisfy that test. *Weinberger*,[] 422 U.S.[ at 772]." 667 F.2d at 533. The Court then dismissed the plaintiffs' claim because they could not argue "successfully that the guidelines [were] so unrelated to a legitimate legislative goal as to violate this 'rational relationship' test." *Id.* In the instant action, this Court will not affirm the district court's characterization of Defendants' enrollment process as an unconstitutional irrebuttable presumption; however, we dispute Defendants' assertion that the current process is rationally related to their proffered legitimate state goals.

the invalidity under the Due Process Clause where there are other reasonable and practicable means of establishing the pertinent facts on which the state's objective is premised." *Vlandis v. Kline*, 412 U.S. 441, 451 (1973); *see also Weinberger*, 422 U.S. at 776-77 (criticizing portions of the *Vlandis* ruling on other grounds; however, reiterating the validity of statutory restrictions, so long as Congress "could [have] rationally [] concluded both that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule."). Defendants' enrollment process is not rationally related to their proffered legitimate state goals. In fact, there are alternative reasonable and practical means by which TennCare can administer its medical benefits, such as modifying the application so as to eliminate the solicitation of vague or ambiguous information regarding the applicant's insurance coverage history, instead opting for direct and concise information; or modifying the initial denial process by encouraging the immediate supplementation of the application before a decision is made or there is an immediate appeal, rather than suggesting re-application. We therefore hold that Defendants' current process is not rationally related to legitimate state goals.

## CONCLUSION

For the forgoing reasons, we **AFFIRM** the district court's order in Case No. 01-5653; and **AFFIRM** the district court's order in Case No. 01-5930.

---

### DISSENT

---

ALICE M. BATCHELDER, Dissenting.  I respectfully dissent.  I would hold that the plaintiffs do not have a property interest in or a legitimate claim of entitlement to the TennCare benefits prior to plaintiffs' obtaining approval of their applications, and that even if the plaintiffs could demonstrate such an interest, they have not demonstrated either a procedural or a substantive due process violation.  Finally, I would hold that the irrebuttable presumption doctrine has no rational application to this case.

It is not clear to me whether in the section entitled "Due Process Rights" the majority opinion actually holds that the plaintiffs have demonstrated a substantive due process violation, or holds only that the plaintiffs have demonstrated that they have a property interest for the purposes of a procedural due process claim.  In my view, the plaintiffs can demonstrate neither.  Unlike the plaintiffs in *Goldberg v. Kelly*, 397 U.S. 254 (1970), these plaintiffs were not already receiving benefits which the state intended to or did terminate without a pretermination hearing.  And the majority's conclusion that because TennCare is a program created under the Medicaid Act, and Medicaid is a program established under the Social Security Act, applicants for TennCare, like applicants for social security, have a property interest in the benefits "for which they hope to qualify" is unwarranted.  Contrary to the majority opinion's claim, we did not hold in *Flatford v. Chater*, 93 F.3d 1296 (6th Cir. 1996), that applicants for social security benefits have a property interest in those benefits.  Rather, based on the Supreme Court's decision in *Richardson v. Perales*, 402 U.S. 389, 401-02 (1971), which in turn quoted the Court's observation in *Flemming v. Nestor*, 363 U.S. 603, 610 (1960), that the "right to Social Security benefits is in one sense earned," we said:

Because the Supreme Court has assumed in *Perales* that a social security applicant has 'more than a unilateral expectation' of a benefit, and because this assumption is necessary to the holding in that case (that due process applied) we proceed on the same basis.  Thus we will *assume* that Flatford has a property interest in the benefits he claims.

*Flatford*, 93 F.3d at 1304-05 (internal citations omitted) (emphasis added).

In *Bd. of Regents v. Roth*, 408 U.S. 564 (1972), the Supreme Court made it clear that a property interest is something in which an individual "must have more than an abstract need or desire . . . .  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577.  And property interests, the Court emphasized, are not created by the Constitution but are creatures of independent sources such as state law.[1] *Id.*

TennCare is a partially federally funded waiver plan created by the State of Tennessee under Medicaid.  TennCare benefits are different from social security benefits, which are premised on contributions paid into the system by the claimant during his or her years of employment.  Although Medicaid is set up under the social security program, it is not a program that awards benefits that are in any sense "earned," and TennCare, which is established under Medicaid, is not a medical insurance program into which these plaintiffs have made payments or contributions.  Medicaid is a program that was enacted "for the purpose of providing federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons," *Harris v. McRae*, 448

---

[1]The majority opinion cites *Atkins v. Parker*, 472 U.S. 115 (1985), where the property rights (food stamp benefits) established by statute were being taken away; unlike the situation here where no right has ever been established.  *See Atkins*, 472 U.S. at 117-18.

U.S. 297, 301 (1980), and a state is not required to provide Medicaid services for which there is no federal financial participation. *See id.* The TennCare program is subject to both state and federal funding limits, and the state law establishing the program provides that expenditures of state funds for the program cannot exceed the amount appropriated for it by the legislature. TENN. CODE ANN. § 71-5-109.

TennCare is not only limited in financial scope, it is limited to specific classes of recipients: material to this litigation are those who are uninsured and those who are uninsurable. The program is further limited as to the former—they have a window of opportunity for applying for the insurance; no such limitation applies to the latter. In order to enforce those limitations, the State has empowered the Commissioner of the Department of Finance and Administration to designate the place and manner in which applications for enrollment in the program are to be filed. The Commissioner requires that any applicant who seeks enrollment in TennCare on the basis of uninsurability must provide a letter from a private insurer stating that the applicant has been denied insurance coverage. In short, only those applicants who are eligible by reason of their being uninsured or uninsurable have any hope of becoming insured under TennCare; only those uninsurable applicants who provide evidence of uninsurability may take advantage of the open enrollment; and only a finite number of those will be enrolled in the program because of the funding limitations.

These plaintiffs have demonstrated no more than a unilateral expectation that they would be able to enroll in the TennCare program. They are not in the position of the *Goldberg* plaintiffs, whose existing benefits were about to be terminated without any opportunity for the plaintiffs to establish their continuing eligibility for those benefits under the statute. They are not in the position of the plaintiff in *Flatford*, whose claim was for benefits from the social security system into which he had paid during the years of his employment. The fact that Medicaid does not limit the

duration of benefits to Medicaid recipients after they have been found to be eligible does not, as the majority opinion holds, establish a continuity of entitlement in an applicant for enrollment in the TennCare program, and the fact that Medicaid is established under the Social Security Act does not suffice to convert a TennCare applicant's hope of becoming an enrollee into a legitimate expectation of obtaining TennCare coverage. These plaintiffs have no property interest in the TennCare benefits they seek.[2]

Even if one could conclude that the plaintiffs have demonstrated a property interest, however, they have not demonstrated that they have been denied due process, either substantive or procedural. Turning first to substantive due process, as this court has often observed, "[t]he interests protected by substantive due process are of course much narrower than those protected by procedural due process." *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003). The Supreme Court has made it clear how narrow those interests are:

Our established method of substantive-due-process analysis has two primary features: First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and

---

[2]The majority opinion's reliance on Supreme Court precedent concerning private rights of action to buttress its conclusions as to property rights is troubling. In *Gonzaga University v. Doe*, 536 U.S. 273 (2002), the Supreme Court discussed the determination of a cause of action under § 1983. *Gonzaga*, 536 U.S. at 283-84. The Supreme Court's discussion in *California v. Sierra Club*, 451 U.S. 287 (1981), likewise concerns a private right of action. *Sierra Club*, 451 U.S. at 294 ("Here, the statute states no more than a general proscription of certain activities; it does not unmistakably focus on any particular class of beneficiaries whose welfare Congress intended to further. Such language does not indicate an intent to provide for private rights of action.") The majority opinion provides no authority to support its apparent conclusion that property rights are the equivalent of private rights of action.

tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. Second, we have required in substantive-due-process cases a careful description of the asserted fundamental liberty interest.

*Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). Under no stretch of the imagination does the plaintiffs' claim of entitlement to enrollment in TennCare rise to the level of a fundamental right or liberty implicit in the concept of ordered liberty. Indeed, it is difficult to imagine liberty or justice being disturbed at all by the deprivation these plaintiffs claim, let alone ceasing to exist.

While I do not think that the forms used by the TennCare program provided applicants with the best or clearest notice of the application requirements or the appeal procedures, I believe any deficiencies in these forms fall well short of depriving these plaintiffs of procedural due process. These plaintiffs may have been confused by the application forms or the denial letters, but even if that confusion was the fault of the TennCare Bureau, it does not rise to the level of a denial of due process. Contrary to the majority opinion's finding, the denial letters did advise plaintiffs that they had a right to appeal, and, indeed, the letters invited the plaintiffs to call the telephone number provided in the letter if they had questions. To hold, as the majority opinion does, that forms utilized by the bureaucracy deny due process to the individuals who are to use them because those forms are confusing or are less clear than they might be, is to make a constitutional issue out of every dispute over an agency's paperwork. Neither was there any denial of a meaningful opportunity to be heard. These plaintiffs not only received a hearing, they were represented by counsel and had the opportunity to raise their legal challenges to the procedures. That those challenges were not successful does not mean that the plaintiffs were denied due process.

Finally, the majority opinion concludes that TennCare's requirement that applicants seeking to enroll in the program as uninsurables must provide a letter from a private insurer establishing uninsurability, subjects those applicants to an unconstitutional irrebuttable presumption that they are not uninsurable. This flies in the face of logic. An irrebuttable presumption is a presumption that as a matter of law can never be rebutted, regardless of the facts. But an applicant for TennCare who has not provided the required letter and is therefore presumed not to be uninsurable, may rebut the presumption simply by providing the letter. It is true that an applicant who is in fact not uninsurable will not be able to obtain the letter, and hence will not, as a matter of fact, be able to rebut the presumption. But the presumption as to that applicant is irrebuttable only because it is true, not because the applicant, regardless of the actual facts, is not permitted as a matter of law to rebut it.

The majority opinion's reliance on *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632 (1974) (irrebuttable presumption that every pregnant teacher is physically incapable after the fifth or sixth month of pregnancy of continuing to teach), and *Vlandis v. Kline*, 412 U.S. 441 (1973) (irrebuttable presumption of nonresidency for any student who had lived outside the state during the year prior to his application for in-state tuition rate) is entirely misplaced. In neither of these cases were the plaintiffs permitted to avoid the application of the presumptions by providing evidence to rebut them. The plaintiffs before us here, on the other hand, could rebut the presumption that they were not uninsurable simply by providing TennCare with the required letter. The fact that they failed to do so or failed to do so timely, does not make the presumption irrebuttable.

In any event, the Supreme Court has explicitly declined to extend the principles annunciated in *Vlandis* and *LaFleur*, to "a noncontractual claim to receive funds from the public treasury[, which claim] enjoys no constitutionally protected status . . . ." *Weinberger v. Salfi*, 422 U.S. 749, 772 (1975).

In that case, the Court upheld the constitutionality of a provision of the Social Security Act that barred widows who had been married to their late husbands for less than nine months from receiving certain social security benefits that would normally be paid to widowed spouses. Rejecting the district court's extension of the holdings of *Stanley v. Illinois*, 405 U.S. 645 (1972) (holding unconstitutional an irrebuttable presumption that all unmarried fathers are unfit to raise their children), *Vlandis*, and *LaFleur* to the "nine-month rule," the Court said that to apply the doctrine of those cases to the eligibility rule would turn that doctrine "into a virtual engine of destruction for countless legislative judgments which have heretofore been thought wholly consistent with the Fifth and Fourteenth Amendments to the Constitution." *Id.* at 771. The "nine-month rule," the Court concluded, would pass muster if it were legislatively reasonable:

> [T]he question raised is not whether a statutory provision precisely filters out those, and only those, who are in the factual position which generated the congressional concern reflected in the statute. Such a rule would ban all prophylactic provisions, and would be directly contrary to our holding in *Mourning* [*v. Family Publications Serv. Inc.*, 411 U.S. 356 (1973)]. Nor is the question whether the provision filters out a substantial part of the class which caused congressional concern, or whether it filters out more members of the class than nonmembers. The question is whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule.

*Id.* at 777.

The TennCare requirement at issue here is designed to ensure that only individuals who are in fact uninsurable are eligible for TennCare's open enrollment. Certainly the State has a legitimate desire to avoid abuse of the open enrollment benefit, and certainly the State could rationally have concluded that requiring a letter establishing uninsurability would protect against such abuse. Unlike the indiscriminate "nine-month rule" *upheld* in *Weinberger*, the TennCare rule is imprecise only for that period of time until the individual applicant submits the letter demonstrating his uninsurability. It is difficult to envision a method of ensuring against abuse with which it would be easier for the applicant to comply.

Finally, the challenged requirement is perfectly rational when one considers the definition of "uninsurable" that is promulgated in the Tennessee regulations: "unable, because of an existing medical condition, to purchase health insurance . . . ." TENN. COMP. R. & REGS. 1200-13-12-.02. The TennCare Bureau does not determine whether an individual is able to purchase health insurance from a private carrier—the carrier does. The alternative would be for the TennCare Bureau to keep abreast of changes both in medical science and health insurance standards so as to be able to make a conclusive guess as to whether or not a given individual would, if he applied for insurance, be able to purchase it. It is difficult to imagine that such an approach would be more applicant-friendly than the requirement challenged by these plaintiffs.

For all of the foregoing reasons, I dissent.