**Annette B. DeMAURO, Plaintiff, Appellant,**

v.

**Joseph M. DeMAURO, Edward Martin, DeMauro Co., Inc., Nicholas DeMauro, Tri–Area Development Co., Inc. and Joan Martin, Defendants, Appellees.**

No. 96–2082.

United States Court of Appeals, First Circuit.

Heard March 3, 1997.

Decided June 11, 1997.

S. James Boumil, Lowell, MA, for appellant.

Kathleen M. Morrissey with whom Bernard A. Dwork, Roger T. Manwaring, Barron & Stadfeld, P.C., Boston, MA, Richard L. Fox and Carragher & Fox, Chelmsford, MA, were on brief, for appellees Edward Martin, DeMauro Co., Inc., Nicholas DeMauro, Tri-Area Development Co., Inc. and Joan Martin.

Before BOUDIN, Circuit Judge, BOWNES, Senior Circuit Judge, and LYNCH, Circuit Judge.

BOUDIN, Circuit Judge.

In this case, one of the participants in a pending divorce action has invoked the federal racketeering statute to challenge asset transfers by her spouse. The district court responded by dismissing the complaint without prejudice on abstention grounds. Because dismissal was on the pleadings, we assume the truth of statements in the complaint, cautioning that they have yet to be proved.

Annette and Joseph DeMauro were married in 1979. Joseph worked in the construction business and, according to Annette, earned "millions of dollars," promising to share monies with Annette. But the marriage proved less successful than his business. The couple separated, and in 1994, Annette—a New Hampshire resident—sued for divorce in New Hampshire state court.

The divorce action has been a bitter and prolonged contest. At various times, Joseph has refused to pay spousal support orders (which total more than $250,000), has failed to appear for court proceedings, has resisted discovery requests concerning his income and property interests by invoking the Fifth Amendment, and has been held in contempt of court. After more than two years, the divorce action remains unresolved.

In May 1996, Annette filed the instant suit in the federal district court in Massachusetts. The complaint named Joseph and five other defendants: Joseph's 42–year–old son, Nicholas DeMauro; Joseph's sister and brother-in-law, Joan and Edward Martin; and two corporations allegedly controlled by Joseph and Nicholas—DeMauro Co., Inc. and Tri-Area Development Co., Inc. Joseph was alleged to have a residence in Massachusetts and both corporations had offices in the state.

The complaint set forth a RICO claim for civil conspiracy, 18 U.S.C. § 1961 *et seq.*, specifying predicate racketeering acts of (1) mail fraud, 18 U.S.C. § 1341, (2) wire fraud, 18 U.S.C. § 1343, and (3) "extortionate threats," 18 U.S.C. § 1951. The complaint also alleged pendent state-law claims [1] for intentional infliction of emotional distress, breach of fiduciary duty, conspiracy, fraudulent conveyances, and illegal telephone recordings.

In support of the RICO claim, the complaint charged *inter alia* that Joseph and the other defendants fraudulently concealed from Annette separate and marital property to prevent her from sharing in these assets. Annette alleged that Joseph and the other defendants

by means of false pretenses, representations, and devices established bank and investment accounts in Switzerland, [the] Middle East, France, Liechtenstein, several states of the United States and various and sundry other locations most of which

---

1. Diversity jurisdiction was not available because although Joseph is apparently not a New Hampshire resident, Annette and the Martins are New Hampshire residents, thus defeating the complete diversity requirement. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668, 673 (1st Cir.1994).

accounts were established under the names of straws, sham trusts, shell companies and phony "foundations," all designed to conceal the location, extent, and existence of assets from [Annette] and persons with whom [Joseph] did business.

The alleged activity was undertaken not by Annette's husband alone, but also by others who comprised an alleged RICO "enterprise," and it involves alleged concealments "well in excess of a million dollars." And, allegedly, Joseph not only threatened to deprive Annette of assets but also boasted that he had bribed foreign officials to secure himself a false identity and foreign passport.

In June 1996, all the defendants except Joseph moved to dismiss the suit on various grounds, including lack of standing to bring RICO claims and failure to plead fraud with requisite particularity, Fed.R.Civ.P. 9(b). Joseph did not join these motions because he had not yet been served process, despite efforts by Annette to locate and serve him. Joseph was finally served with process while appearing involuntarily in New Hampshire state court, having been arrested and brought there for a hearing on his failure to pay ordered spousal support.

On July 26, 1996, the district judge issued a seven-page order. He expressed doubt whether Annette had shown a property interest protectible under the civil RICO statute; but he ultimately did not decide this issue and instead dismissed without prejudice Annette's claims against all the defendants. The dismissal was based upon the doctrine of abstention established in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Rather than staying the federal proceedings, the court dismissed, noting that Annette could

> replead if and when she can show a "property" right which ... has been denied her by the defendants' allegedly illegal transfers—that is, after the resolution of the divorce action and the attendant allocation of marital assets.

The parties had not addressed the possibility of abstention in their filings. In August 1996, Annette moved for reconsideration, arguing that abstention was not proper and that, if it were proper, the court should stay proceedings rather than dismissing the action. The court denied her motion without comment. Annette now appeals.

■ 1. For reasons that will become evident, we begin with the threshold issue bypassed by the district court, namely, whether the plaintiff has made out a claim of "injury" to her "business or property," as is required for a civil RICO damages action. 18 U.S.C. § 1964(c). This is sometimes described as a "standing" issue. There is plainly a case or controversy under Article III; but the statutory precondition of injury to business or property must also be met. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).

One might think it obvious that a precondition in a federal statute would be defined uniformly by federal law. *Cf. Agency Holding Corp. v. Malley–Duff & Assoc., Inc.*, 483 U.S. 143, 147–49, 107 S.Ct. 2759, 2762–64, 97 L.Ed.2d 121 (1987) (civil RICO statute of limitations). This is especially so where the same phrase—injury to business or property—is also a long-standing requirement under section 4 of the Clayton Act, 15 U.S.C. § 15(a). Yet, the RICO precedents are filled with references to state property law, which is often said to govern by implicit cross-reference. *E.g., Doe v. Roe*, 958 F.2d 763, 768 (7th Cir.1992) (citing cases).

Some role does exist for state law. There is no general federal law of property transfers, so the question who owns a piece of property is likely to be settled by state law. On the other hand, one might expect federal law to decide whether a given interest, recognized by state law, rises to the level of "business or property," or whether "injury" has been done to it by the acts alleged.[2] Where to set the "business or property" threshold depends on federal statutory purpose, and

---

**2.** *E.g., Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 529–45, 103 S.Ct. 897, 903–12, 74 L.Ed.2d 723 (1983) (examining the meaning of "injury" under section 4 of the Clayton Act); compare *Roma Constr. Co. v. aRusso*, 96 F.3d 566, 579–80 n. 10 (1st Cir.1996) (Lynch, J., concurring).

that purpose is likely to support a definition that is uniform throughout the country.

In all events, the assets that Annette ultimately claims to have been concealed are "property" by any definition: the complaint alleges fraudulent concealment and transfers of real property and bank account funds by Joseph. One difficulty—so far as we can tell from the undeveloped record—is that most (perhaps all) of this property may have been held from the outset in Joseph's name or in the name of others such as foundations that he controls. The complaint also implies that most (perhaps all) of the underlying assets were the result of the success of Joseph's construction business.

New Hampshire is not a community property state, *see Baker v. Baker,* 120 N.H. 645, 421 A.2d 998, 1000 (1980), and much of the real property and monies described in the complaint may not yet be Annette's property. To this extent, what Annette has is an expectancy: in the divorce proceedings, some or much of this property may be awarded to Annette. State law provides for "equitable division" in divorce actions of "all tangible and intangible property and assets ... belonging to either or both parties, whether title to the property is held in the name of either or both parties." N.H.Rev.Stat. Ann. § 458:16–a. An equal division is presumptively equitable. *Id.* § 458:16–a(II).

If the real and other tangible property, or most of it, belongs to Joseph, can it still be said that Annette's divorce-suit claim to a share is also "property" protectible by RICO? Possibly so. Some precedent, at least under the Clayton Act, extends protection to intangibles under certain circumstances.[3] But even if we assume *arguendo* that Annette's claim is itself protected property, the question remains whether Joseph's alleged efforts to conceal what is still his property (real property and cash) has "injured" Annette's property (her inchoate claim).

Certainly, Annette *may* be worse off because of the concealment; but her legal claim remains intact, together with various remedies directed at concealment of assets. (In fact, she has already obtained attachments in state court totalling $33 million on property owned partly or solely by Joseph.) No one knows what Annette will be awarded in the divorce action or whether Joseph's alleged efforts to conceal will hamper her ability to collect. In sum, any claim of present "injury" to her claim is speculative, so long as we are concerned with the movement of real property or cash that for now belongs to Joseph.

Pertinent here is a decision of this court upholding dismissal of a civil RICO claim brought by a plaintiff who alleged injury based on a "hypothetical inability to recover" if it won its pending contract lawsuit against the defendant. The defendant had allegedly made fraudulent transfers of assets to his wife; but we held that the RICO claim was not ripe for adjudication because the claimed injury was too speculative. *Lincoln House, Inc. v. Dupre,* 903 F.2d 845, 847 (1st Cir. 1990). This and like decisions[4] seem directly on point.

To be sure, there is a certain arbitrariness in drawing the line here. But while RICO is to be construed broadly, *Sedima,* 473 U.S. at 498, 105 S.Ct. at 3285–86, "injury to property" is not an infinitely elastic concept. And in cases like this, it is hard to see how a court would calculate damages now, given the dual uncertainties of what Annette will be awarded and how it will be affected by concealment. *See First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 768 (2d Cir. 1994), *cert. denied,* 513 U.S. 1079, 115 S.Ct.

---

3. *E.g., E.A. McQuade Tours, Inc. v. Consolidated Air Tour Manual Comm.,* 467 F.2d 178, 184 (5th Cir.1972), *cert. denied,* 409 U.S. 1109, 93 S.Ct. 912, 34 L.Ed.2d 690 (1973) (contracts are "property" under the Clayton Act); *cf. Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430–33, 102 S.Ct. 1148, 1154–56, 71 L.Ed.2d 265 (1982) (right to use adjudicatory procedures created by state Fair Employment Practices Act is "property" protected by the Due Process Clause).

4. *See Barnett v. Stern,* 909 F.2d 973, 977 n. 4 (7th Cir.1990); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1106 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 1643, 104 L.Ed.2d 158 (1989); *Capasso v. CIGNA Ins. Co.,* 765 F.Supp. 839, 842 (S.D.N.Y.1991).

728, 130 L.Ed.2d 632 (1995) ("[A]s a general rule, a cause of action does not accrue under RICO until the amount of damages becomes clear and definite.").

This conclusion—that Annette has not adequately alleged injury to her property—applies only to the extent that the concealed property currently belongs solely to Joseph or others. However, the complaint also asserts that Joseph has sought to conceal "marital" or "separate" property. To the extent that Annette is claiming a present ownership interest, she appears to be asserting injury to her property within the terms of the RICO statute. *Cf. Grimmett v. Brown,* 75 F.3d 506, 516–17 (9th Cir.), *cert. granted,* —— U.S. ——, 116 S.Ct. 2521, 135 L.Ed.2d 1046 (1996), *cert. dismissed,* —— U.S. ——, 117 S.Ct. 759, 136 L.Ed.2d 674 (1997).

Admittedly, Annette's allegations of ownership are confusing and in certain respects lack supporting detail. They certainly could be explored through inquiry and discovery and could be tested, if doubtful, by a motion to dismiss or by summary judgment. Still, on the present pleadings the possibility remains that Annette already owns some of the property allegedly concealed by Joseph and others. On that premise, we turn to the issue of abstention.

■ 2. We note at the start that the district court's remedy—dismissal on abstention grounds—is not permissible. Just two months before the district court issued its ruling, the Supreme Court held that abstention, under *Burford* or otherwise, may be appropriate in suits for damages. *Quackenbush v. Allstate Ins. Co.,* —— U.S. ——, ——, 116 S.Ct. 1712, 1728, 135 L.Ed.2d 1 (1996). But the Court further held that in a damages action, the district court may only order a stay pending resolution of state proceedings; it cannot invoke abstention to dismiss the suit altogether. *Id.*

The rationale of *Quackenbush* is that damages actions, unlike suits for equitable relief, do not invoke the court's equitable discretion. *Id.* at ——, 116 S.Ct. at 1727. This rule may seem rather wooden, given the merger of law and equity, but the Court means what it says: *Quackenbush* held that the dismissal of

a damages action on *Burford* grounds was reversible error, without deciding whether "a more limited abstention-based stay order would have been warranted on the facts of this case." *Id.* at ——, 116 S.Ct. at 1728. There is no question that the present RICO claim is primarily a damages action. *See* complaint, ¶¶ 62–67. It is uncertain whether equitable relief is even available to private plaintiffs under civil RICO. *Lincoln House,* 903 F.2d at 848.

The question remains whether the district court has authority at least to stay Annette's federal suit on abstention grounds, pending resolution of the New Hampshire divorce proceeding. In that proceeding, the state court might determine what property is *currently* owned by Annette. *See* N.H.Rev.Stat. Ann. § 458:16–a(II). For this reason, another district court—cited by the district court in this case—has abstained from adjudicating a federal RICO action brought by a spouse involved in pending divorce proceedings. *Farkas v. D'Oca,* 857 F.Supp. 300, 303–04 (S.D.N.Y.1994). *See also Dibbs v. Gonsalves,* 921 F.Supp. 44, 52 (D.P.R.1996).

This is not a wholly persuasive reason given New Hampshire law's stress on an equitable division of all the parties' property. The New Hampshire decree may just as well *not* decide who owned specific property prior to the divorce: its main concern is with who will own what after the divorce. And, the Supreme Court has discouraged abstention based solely on the ground that a related state court action may address similar issues, *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976), with only limited exceptions, *e.g., Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

A more plausible basis for abstention is the possible interference that a civil RICO action at this time might cause to the state court's decision as to how to divide property in the divorce. The so-called domestic relations exception does not preclude federal courts from adjudicating tort actions merely because the parties were married and are in the process of divorce. *Ankenbrandt v. Richards,* 504

U.S. 689, 704, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468 (1992). But *this* case is not just a tort action between divorcing parties: the civil RICO claim is directed to the same property that is going to be allocated between the parties as a result of the decree. *Cf. Colorado River,* 424 U.S. at 819, 96 S.Ct. at 1247.

In this instance, the state court may be unlikely to award Joseph any interest in property now owned solely by Annette, but that is hardly so clear with respect to property owned jointly. Suppose Annette were awarded the value (or three times the value) of disputed jointly owned property in the RICO case and the state court then determined that the same property ought to be allocated to Joseph. At the very least, there is a possibility of conflict between judgments, requiring one of them to be modified to take account of the other. Otherwise, the state divorce decree's intended allocation of property could easily be frustrated.

Another potential conflict is Annette's expressed interest in seeking interim relief from the federal court, presumably by way of provisional attachments or other *ad litem* remedies. *Cf.* Fed.R.Civ.P. 64; *Teradyne, Inc. v. Mostek Corp.,* 797 F.2d 43, 53 (1st Cir.1986). The federal court's ability to reach and freeze out-of-state property may well be greater than the New Hampshire divorce court's. At the same time, interim allocations of property are standard fare for divorce courts, and the obvious potential for interference with this function is an extremely serious matter.

Our case, and those kinds of threatened interference, are not a perfect fit with the *Burford* doctrine. There, the Supreme Court approved abstention to avoid conflict with a comprehensive state regime of business regulation.[5] But abstention doctrines are not "rigid pigeonholes," *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 11 n. 9, 107 S.Ct. 1519, 1526–27 n. 9, 95 L.Ed.2d 1 (1987), and

the ultimate question is whether there are "exceptional circumstances" in which abstention "would clearly serve an important ... interest." *Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244 (citation omitted). Such an interest is potentially present here. *See also Minot v. Eckardt–Minot,* 13 F.3d 590, 593–95 (2d Cir.1994).

Not only divorce, but the allocation of property incident to a divorce, are longstanding local functions governed by state law. *Ankenbrandt,* while curtailing the domestic relations exception, nevertheless made clear the priority given the state resolution of family law issues, including alimony determinations. 504 U.S. at 704, 706, 112 S.Ct. at 2215, 2216. *See also Friends of Children, Inc. v. Matava,* 766 F.2d 35, 37 (1st Cir.1985). Divorces are frequently accompanied by disputes about property, including both interim and final allocations. Such state court authority would be threatened if civil RICO actions become the shadow proceeding for policing such disputes.

■ We conclude that abstention by use of a stay may be permissible where a RICO action is directed against concealment or transfer of property that is the very subject of a pending divorce proceeding. The divorce proceedings might or might not resolve the federal dispute—there are many possible permutations and plenty of unanswered legal questions. But staying the federal RICO claim will reduce the risk of interfering with interim state allocations and permit the federal court to tailor any final federal judgment to avoid undermining the divorce court's allocation of property.

■ 3. While abstention may be permissible, it cannot be automatic in a case of this kind. A decision to abstain requires not only that certain preconditions be met, but also that the district court reasonably find that such abstention is appropriate in the case at hand.[6] Of course, this may not be much of

---

5. *Burford,* 319 U.S. at 326, 63 S.Ct. at 1103–04 (allocation of oil drilling rights). *See also Alabama Public Serv. Comm'n v. Southern Ry. Co.,* 341 U.S. 341, 346–48, 71 S.Ct. 762, 766–67, 95 L.Ed. 1002 (1951) (scheduling of local railroad service); *Allstate Ins. Co. v. Sabbagh,* 603 F.2d

228, 229 (1st Cir.1979) (setting of automobile insurance rates).

6. *See Quackenbush,* —— U.S. at ——–——, 116 S.Ct. at 1726–28; *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246–47; *Younger v. Harris,* 401 U.S. 37, 54, 91 S.Ct. 746, 755, 27 L.Ed.2d 669

an issue when the particular abstention rubric itself presumes strongly in favor of abstention—for example, where a defendant seeks a federal injunction interfering with an ongoing state criminal trial. *Younger,* 401 U.S. at 45, 54, 91 S.Ct. at 751, 755.

Cases like the present one differ markedly from situations like *Younger.* Not only do we have far less experience with civil RICO actions that overlap divorce proceedings, but extreme variations can be imagined both as to underlying facts and equitable concerns. Certainly in some instances a civil RICO claim might be so plausible and so distinct from an ordinary divorce action property dispute as to undermine any argument for a stay; or even if a trial were stayed, there might be a compelling argument for interim relief to protect the plaintiff's right to ultimate relief in the RICO action.

In sum, abstention here is a possible, but not a mechanical answer. The district court's judgment cannot stand, simply because it conflicts with *Quackenbush.* Nor do we think that the dismissal on abstention grounds can simply be transformed into a stay; such a stay might in the end be equitably justifiable, but not without giving the parties a chance to address the matter and not without an appraisal by the court that goes beyond the possible overlap in issues.

In making such an appraisal, the district court is free to consider the plausibility of this civil RICO claim as a freestanding cause of action, the actual threat in this case for conflict between such a suit and the pending state divorce action, any threat of immediate harm associated with alleged ongoing civil RICO violations, and other consequences or concerns that make it equitably reasonable to accelerate or to defer consideration of federal relief. Once the pertinent factors are mustered and assessed, the district court's exercise of judgment is normally respected. *Friends of Children, Inc.,* 766 F.2d at 37.

The district court has no obligation to pursue the abstention issue at all if the matter can be disposed of more appropriately on other grounds. Motions to dismiss have been made for lack of standing (an issue discussed above), for failure to plead fraud with particularity, and for other reasons. Possibly, further exploration will reveal that Annette has no standing as to *any* of the property in question. In all events, the order in which to consider issues is a matter for the district judge.

The treatment of the pendent state claims depends, in turn, on the outcome of the inquiries just described. If the district court finds no basis for a claim of injury to property, presumably it will dismiss the pendent claims without prejudice. *See* 28 U.S.C. § 1367(c)(3). If it determines to stay the civil RICO claim on abstention grounds, then the treatment of the pendent claims is less clear-cut, *see id.* § 1367(c)(4), but the parties have not addressed that issue, and we express no view upon it.

The judgment of the district court is *vacated* and the matter *remanded* for further proceedings consistent with this decision.

*It is so ordered.*

---

(1971); *Bath Memorial Hosp. v. Maine Health Care Fin. Comm'n,* 853 F.2d 1007, 1015 (1st Cir.1988); *Friends of Children, Inc.,* 766 F.2d at 37.