*573 KAREN NELSON MOORE, Circuit Judge,
dissenting.
The Racketeer Influenced and Corrupt Organizations Act (“RICO”) entitles individuals who have been “injured in [their] business or property by reason of’ racketeering to treble damages, costs, and fees. 18 U.S.C. § 1964(c). Clifton Jackson and Christopher Scharnitzke (collectively, “the employees”) allege that they were injured in their property when Sedgwick Claims Management Services, Inc., Coca-Cola Enterprises, Inc., and Paul Drouillard (collectively, “the defendants”) conspired to deny fraudulently or to terminate fraudulently benefits to which they were entitled pursuant to Michigan law. Notwithstanding the fact that Michigan has recognized these benefits as statutory entitlements and that these statutory entitlements in turn constitute a property interest, the majority concludes that the employees have failed to state a claim under RICO because they have not alleged an injury in their property.
The most striking aspect of the majority opinion, though, is the way in which it evades entirely any discussion of the property interest that the employees allege in their complaint as the injury they suffered under RICO. Instead, the majority reaches its conclusion by analyzing certain personal injuries that the employees do not allege form the basis of their RICO claim. Because I believe that we must accept a plaintiffs allegations as true on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and because the employees here have alleged an injury in their property, I cannot agree with the majority’s analysis or reach its conclusion. I respectfully dissent.
I. INJURY TO PROPERTY
The primary issue in this appeal is whether the employees have alleged an injury in their business or property within the meaning of RICO. In determining that they have not,[1] the majority chooses to ignore the fact that the employees have alleged an injury to a legal entitlement, and therefore, to property, and instead focuses on the irrelevant fact that the employees also suffered a personal injury. I fail to see support for the majority’s analysis and believe that the employees have alleged an injury to property-Jackson, by alleging fraudulent termination of his worker’s compensation benefits, and Scharnitzke, by alleging the fraudulent devaluation of his expectancy of worker’s compensation benefits. For the reasons stated below, I would allow the employees’ claims against the defendants to proceed.
A. Background
Title 18 U.S.C. § 1964(c) entitles those who have been “injured in [their] business or property by reason of’ racketeering, among other actions, to treble damages, costs, and fees. A plaintiff can recover under § 1964(e) only if he or she can demonstrate an injury to “business or property.” Shaping the analysis of this provision is the Supreme Court’s instruction that “RICO is to be read broadly.” Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). The Supreme Court justified that rule in two ways. First, Congress wrote the RICO statute with “self-consciously expansive language and overall approach.” Id. at 498, 105 S.Ct. 3275 (citing United States v. Turkette, 452 U.S. 576, 586-87, 101 S.Ct. *574 2524, 69 L.Ed.2d 246 (1981)). Second, Congress “express[ly] admonished] that RICO is to ‘be liberally construed to effectuate its remedial purposes.’ ” Id. (quoting Pub.L. No. 91-452, § 904(a), 84 Stat. 947). The remedial pin-pose of RICO is “nowhere more evident than in the provision of a private action for those injured by racketeering activity.” Id.
B. State Or Federal Law
Whether a person has a “property” interest is traditionally a question of state law. Logan v. Zimmerman Brush Co., 455 U.S. 422, 430, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (“The hallmark of property ... is an individual entitlement grounded in state law”). For that reason, “ ‘[ijnjury to property’ for RICO purposes is generally determined by state law.” Isaak v. Trumbull Sav. & Loan Co., 169 F.3d 390, 397 (6th Cir.1999) (citing DeMauro v. DeMauro, 115 F.3d 94, 96 (1st Cir.1997)). We have never fleshed out the circumstances under which state law is not determinative of whether someone has a property interest at stake, but several of our sister circuits have suggested that federal law can constrict state definitions of property. In DeMauro, for example, the First Circuit stated that “one might expect federal law to decide whether a given interest, recognized by state law, rises to the level of ‘business or property,’ ” a question that “depends on federal statutory purpose.” DeMauro, 115 F.3d at 96; see also Evans v. City of Chicago, 434 F.3d 916, 930 n. 25 (7th Cir.2006) (“[W]e need not adopt a state law definition of ‘business or property’ which is so broad that it contravenes Congress’ intent in enacting the RICO law.”); Price v. Pinnacle Brands, Inc., 138 F.3d 602, 607 (5th Cir.1998) (“[E]ven though courts may look to state law to determine, for RICO purposes, whether a property interest exists, it does not follow that any injury for which a plaintiff might assert a state law claim is necessarily sufficient to establish a claim under RICO.”) (internal footnote omitted); cf. Town of Castle Rock v. Gonzales, 545 U.S. 748, 757, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005) (invoking the same rule when deciding whether property is protected under the Due Process Clause).
Under this view, a court must ask both whether Michigan defines the interest at stake as property and whether such a definition is consistent with the concept of property that Congress protected in enacting RICO. The majority, however, has chosen to ignore the former. In fact, the majority does not even acknowledge that the employees have alleged injury to a property interest as recognized under Michigan law. Because it is necessary to decide whether there is a property interest at stake and define it accurately prior to determining whether that property interest is recognized under RICO, I will address each inquiry in turn.
C. Property Interest Under Michigan Law
The First Amended Complaint identifies the employees’ injuries as including the fraudulent termination and denial of worker’s compensation benefits that they were due pursuant to the Michigan Worker’s Disability Compensation Act (“WDCA”). Specifically, Jackson alleges that the defendants conspired to terminate fraudulently benefits that he had been receiving, and Scharnitzke alleges that the defendants conspired to deny him fraudulently benefits that he was due. R. 2 (First Am. Compl. at 18-21) (Page ID # 41-44). Because Michigan’s nondiscretionary worker’s compensation scheme creates a property interest in the continued receipt of statutory benefits as well as in the expectancy of statutory benefits following notice to the employer of injury, I cannot agree *575 with the majority’s characterization of the interest at issue as relating only to a personal injury.
Both Michigan law and federal law recognize that the recipient of a statutory entitlement “has a statutorily created property interest in the continued receipt of those benefits.” Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 60, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (citing Goldberg v. Kelly, 397 U.S. 254, 262 & n. 8, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)); Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Logan, 455 U.S. at 428, 102 S.Ct. 1148; Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); see also Williams v. Hofley Mfg. Co., 430 Mich. 603, 424 N.W.2d 278, 282, 283 n. 16 (1988) (relying on federal due process law articulated in Logan, 455 U.S. at 428, 102 S.Ct. 1148). A recipient of Michigan worker’s compensation benefits undoubtedly has a property interest under state law in the continued receipt of those benefits. Jackson has therefore alleged a property interest in the continued receipt of his worker’s compensation benefits under Michigan law. Because Scharnitzke’s allegations center on the fraudulent denial of benefits as opposed to the fraudulent termination of benefits, the next issue is whether an injured employee obtains a property interest in his expectancy of worker’s compensation benefits. For the reasons explained below, I would hold that an employee obtains a property interest at the time the employer becomes aware of the injury.
Michigan has not directly addressed at what point an injured employee has a property interest in the benefits provided by the WDCA. In construing other statutes, Michigan courts have held that “a unilateral expectation of [a statutory] benefit” before the benefit is awarded is not property because the claimant must “have a legitimate claim of entitlement to the funds.” City of St. Louis v. Mich. Underground Storage Tank Fin. Assurance Policy Bd., 215 Mich.App. 69, 544 N.W.2d 705, 708-09 (1996) (citing Williams, 424 N.W.2d 278). However, that principle originates in federal due process law.[2] Castle Rock, 545 U.S. at 756, 125 S.Ct. 2796 (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). And when interpreting federal due process law, “[ejvery regional circuit to address the question,” including the Sixth Circuit, “has concluded that applicants for benefits, no less than benefits recipients, may possess a property interest in the receipt of public welfare entitlements,” Cushman v. Shinseki, 576 F.3d 1290, 1297 (Fed.Cir.2009) (internal quotation marks and alteration omitted), so long as “a statute mandates the payment of benefits to eligible applicants based on objective, particularized criteria,” Mallette v. Arlington Cnty. Emps.’ Supplemental Ret. Sys. II, 91 F.3d 630, 640 (4th Cir.1996); see also Hamby v. Neel, 368 F.3d 549, 559 (6th Cir.2004); Flatford v. Chater, 93 F.3d 1296, 1305 (6th Cir.1996).[3]
*576 Federal due process law therefore recognizes a property interest in benefits that have not yet been awarded if the party asserting the property entitlement can “point to some policy, law, or mutually explicit understanding that both confers the benefits and limits the discretion of the [other party] to rescind the benefit.” R.S.W.W., Inc. v. City of Keego Harbor, 397 F.3d 427, 435 (6th Cir.2005) (internal quotation marks omitted); see also Castle Rock, 545 U.S. at 756, 125 S.Ct. 2796 (“[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion.”). Michigan law is consistent with this approach. For example, the Michigan Supreme Court has held that a bar owner with a liquor license has a property interest in his expectancy of receiving a renewal license, independent of his interest in his existing license, despite having had no property interest in his expectancy of an initial license in the first place. Bundo v. City of Walled Lake, 395 Mich. 679, 238 N.W.2d 154, 160 (1976). The Michigan Supreme Court focused entirely on the differences in the statutory procedures for obtaining a renewal license as compared to an initial license. An initial applicant for a liquor license must obtain approval from the local legislative body before the license may be granted; the initial applicant therefore has nothing more than a unilateral expectation or hope that he may receive the license. An existing licensee need not obtain such approval; unless an objection by the local body is filed prior to thirty days before his license expires, renewal “takefs] place as a matter of course.” Id. at 157, 161.
Upon application of this principle to the present context, the statutory procedures for obtaining worker’s compensation benefits in Michigan indicate that applicants for worker’s compensation benefits have a property interest in those benefits at the time that their employer becomes aware of the injury. The WDCA’s mandatory language deprives the Worker’s Compensation Appellate Commission (“WCAC”) of discretion about whether to award benefits. The statute says that employees injured in the course of employment “shall be paid compensation,” which is calculated according to a rigid schedule. Mich. Comp. Laws § 418.301(1) (emphasis added); see also Reed v. Yackell, 473 Mich. 520, 703 N.W.2d 1, 7 (2005) (referring to the WDCA process and the employer’s assumption of responsibilities as “automatic”).
Moreover, there is no “well established tradition” of government officials having “discretion” despite “apparently mandatory ... statutes” in the context of the WDCA. Castle Rock, 545 U.S. at 760, 125 S.Ct. 2796. In fact, no adjudication is required: an employee receives worker’s compensation benefits fourteen days “after the employer has notice or knowledge of the disability.” Mich. Comp. Laws § 418.801(1). Applicants therefore acquire a property interest in worker’s compensation when employers learn of their employees’ physical injuries. The property interest has an “ascertainable monetary value” and the identity of the entitlement is neither indeterminate nor vague. Castle Rock, 545 U.S. at 766, 125 S.Ct. 2796 (internal quotation marks omitted). These features demarcate a property interest guaranteed by the mandatory language of the WDCA.
The defendants argue that the employer’s statutory ability to dispute the payment of benefits negates any claim of legal entitlement to benefits prior to a decision to award them. As an initial matter, the defendants misread *577 § 418.801(2) as permitting the nonpayment of otherwise mandatory weekly compensation in the event of an ongoing dispute. It does not. Subsection (2) relieves an employer of an otherwise automatic penalty for the non-payment of the benefits owed under the statute in the event of an ongoing dispute. But even if it did relieve the employer of its obligation, the existence of a limited mechanism to dispute the receipt of benefits otherwise awarded as a matter of course does not make the expectation cease to be a property interest.[4] In Bundo, for example, the Michigan Supreme Court deemed it of no consequence that the local legislative body retained a statutory right to object to renewal of a liquor license. 238 N.W.2d at 160-61.
The absence of a specific statutory provision authorizing an employer not to pay compensation during a dispute also distinguishes this case from American Manufacturers. In American Manufacturers, the Supreme Court held that claimants of worker’s compensation benefits in Pennsylvania did not have a property interest in the payment of benefits prior to an adjudication that the medical treatments for which they sought compensation were “reasonable and necessary.” 526 U.S. at 61, 119 S.Ct. 977. In 1993, Pennsylvania had amended its worker’s compensation laws to insert a procedure by which an employer could require a review of the necessity of an employee’s treatments “before a medical bill must be paid.” Id. at 45, 119 S.Ct. 977. The Supreme Court held that under the new regime, it was no longer enough that the plaintiffs demonstrated their “initial eligibility for medical treatment” because they had not overcome the second statutory hurdle of showing “that the particular medical treatment they received was reasonable and necessary.” Id. at 61, 119 S.Ct. 977. The injured employees therefore could not yet claim a property interest in their expectation of benefits. Id.
Here, the underlying Michigan state law does not require injured employees to make such an initial showing before they receive benefits, as Pennsylvania’s law did. In contrast, Michigan law resembles the old Pennsylvania regime, stating simply that “[a]n employee[ ] who receives a personal injury arising out of and in the course of employment by an employer ... shall be paid compensation as provided in this act.” Mich. Comp. Laws § 418.301(1). Although an employee bears the burden of showing that his personal injury arose during the course of his employment in the event of a dispute, no Michigan statutory provision permits the employer to withhold compensation until such a showing has been made. Mich. Comp. Laws § 418.851.
Where, as here, the receipt of the benefit is nondiscretionary and statutorily occurs as a matter of course, I firmly believe that the Michigan courts would recognize a property interest in an injured employee’s expectancy of worker’s compensation.[5] *578 Because Scharnitzke has alleged that he was denied benefits that he was due under the WDCA’s mandates, I would hold that he has alleged a property interest cognizable under RICO.
D. Property Interest Under RICO
Because Michigan has created a property interest in the continued receipt of worker’s compensation benefits, as well as in the’ expectancy of those benefits, I will now turn to whether these statutory entitlements constitute an injury to property within the meaning of RICO. The majority concludes that even if these were statutory entitlements under Michigan law, they are not cognizable for the purposes of RICO, relying on a misplaced belief that neither Jackson nor Scharnitzke can recover under RICO because the property interest they seek to vindicate relates in some manner to a personal injury. I use the phrase “relate in some manner to” because the majority has failed to provide us with a standard on this point. Rather, it employs eight different formulations to describe the relationship between the personal injury and the injury to property, including “flow from,” “arising directly out of,” and “associated with,” without specifying which it considers to be the standard. Maj. Op. at 565-67. Given that many of these phrases have distinct meanings under our precedent, this ambiguity will likely cause confusion in the future.
Relatedly, I find it troubling that the majority assumes for the sake of its opinion that the employees have alleged legitimate statutory entitlements, yet does not even define the type of interest that this creates under Michigan law. It seems impossible to assert that RICO does not include an interest if one has not even attempted to define or categorize the interest at issue. I thus find the majority’s position — that RICO, which specifically protects against injuries to property, does not protect against an assumed undefined injury to property because it relates in some undefined manner to a personal injury — to be unsatisfactory. Although the law is quite clear that a plaintiff cannot bring a RICO action where the injury alleged is a personal injury, no court has ever held that a plaintiff cannot bring a RICO action where the injury alleged is an injury to property because that plaintiff has also suffered a personal injury upon which the plaintiff has made no legal claim. That the majority fails to see this distinction renders its analysis unpersuasive. For the reasons articulated below, I would hold that injury to the statutory entitlements alleged by the employees in this case is an injury to property within the meaning of RICO.
Congress provided in 18 U.S.C. § 1964(c) that “[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court.” The statute offers no further guidance on the meaning of “business or property.” When faced with interpreting similar language in the context of the Clayton Act, the Supreme Court acknowledged that the inclusion of the word “business” works to narrow the definition of “property” from its otherwise naturally *579 broad meaning. Reiter v. Sonotone Corp., 442 U.S. 330, 338, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979). “Congress must have intended to exclude some class of injuries by the phrase ‘business or property.’ ” Id. at 339, 99 S.Ct. 2326. This construction is equally applicable to the language in RICO. For example, money is a species of property under state law, but to hold that all monetary losses are covered by RICO would render the word “business” superfluous. Therefore, whereas damage to a building is an obvious property injury, purely pecuniary losses are sometimes indicative of property injury and sometimes not, depending on whether the pecuniary loss is to a legal entitlement — i.e., property. See id. at 340, 99 S.Ct. 2326 (“[T]he fact that petitioner [ ] was deprived of only money, albeit a modest amount, is no reason to conclude that she did not sustain a ‘property’ injury.”).
Against this backdrop, we have held that “[recovery for physical injury or mental suffering is not allowed under civil RICO because it is not an injury to business or property.” Fleischhauer v. Feltner, 879 F.2d 1290, 1300 (6th Cir.1989), cert. denied, 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1029 (1990); see also Drake v. B.F. Goodrich Co., 782 F.2d 638, 644 (6th Cir.1986); Evans, 434 F.3d at 930-31; Grogan v. Platt, 835 F.2d 844, 847 (11th Cir.1988), cert. denied, 488 U.S. 981, 109 5.Ct. 531, 102 L.Ed.2d 562 (1988). The Supreme Court similarly excluded recovery for purely personal injuries under the Clayton Act, as such injuries are not inherently injury to any entitlement we would deem property. Reiter, 442 U.S. at 339, 99 S.Ct. 2326. Any pecuniary losses proximately resulting from a personal injury caused by a RICO violation — e.g. attorney fees, lost wages, and medical expenses— are also not recoverable because they, too, do not implicate harm to any legal entitlement.[6]
The defendants and the district court focus on language in these cases rejecting pecuniary losses “flowing from” personal injuries to argue that any pecuniary losses downstream from a personal injury are categorically personal in nature and unrecoverable under RICO. See, e.g., Evans, 434 F.3d at 926. The majority seems to reject the use of the term “flowing from,” yet does not offer a definitive replacement. In any event, by focusing on the personal-injury aspect of this case, in whichever capacity they have chosen, the defendants, the district court, and the majority skip over the first and most fundamental question at issue — has any legal entitlement been harmed. They are correct that “but for” the personal injury, the employees would have had no interest in any benefits. But there is nothing in the text of RICO or the cases they point to that provides for ignoring damage to an intervening legal entitlement because it arose following a personal injury. In fact, the majority opinion makes the Sixth Circuit the first to read RICO as preventing recovery for injuries to property “by reason of’ a RICO violation solely because the property interest itself would not have existed but for a personal injury. This is incorrect for three reasons.
*580 First, a plain reading of the text of RICO provides no support for excluding certain categories of property interests based on how the interest itself originated. Recognizing statutory entitlements as property under RICO does not render any term of the act superfluous. See Reiter, 442 U.S. at 338-39, 99 S.Ct. 2326. Nor does the text reject recovery for certain legal entitlements because they accrued following a personal injury. Congress’s only other express limitation is that the injury to property must be “by reason” of a § 1962 violation; the text narrows recovery based on the origin of the injury, not the origin of the property. Based on the plain language of § 1964, I see no reason to exclude statutory entitlements to worker’s compensation benefits — which are recognized as property under state law — from the category protected by RICO.
Second, focusing on the predicate injury that gave rise to the property interest ignores the Supreme Court’s instruction to interpret RICO broadly. Section 1964 places “no restrictions ... on the words ‘injured in his property.’ The statute does not limit standing to those ‘directly injured in his property,’ or ‘injured only in his property.’ ” Comment, Patrick Wackerly, Personal Versus Property Harm and Civil RICO Standing, 73 U. Chi. L.Rev. 1513, 1520-21 (2006). “To the contrary, the language reads that ‘any’ injured party has standing to sue.” Id. at 1521. The Supreme Court has repeatedly refused to graft additional requirements onto the plain language of both this statute and the identical language in the Clayton Act when doing so would defeat Congress’s intent that the statute have broad and inclusive application. See Reiter, 442 U.S. at 339, 99 S.Ct. 2326 (rejecting argument that Clayton Act requires injury to commercial property interests); Sedima, S.P.R.L., 473 U.S. at 497, 105 S.Ct. 3275 (rejecting argument that RICO applies only to organized crime). The majority urges a narrow reading of the word “property,” but points to nothing in the text of RICO or statements of Congress to justify that approach. Because Congress intended us to interpret RICO broadly, Sedima, S.P.R.L., 473 U.S. at 497, 105 S.Ct. 3292, I see no reason to preclude RICO suits that are based on injury to property, not the predicate physical injury that gave rise to the property interest in the first place.
Third, such an approach would yield inconsistent results. The majority does not argue statutory entitlements or claims to benefits generally are not property under RICO, but rather that such interests constitute property only when the underlying wrong to be vindicated is an injury to business or property. Such an approach means that a plaintiff could recover under RICO for the fraudulent devaluation of welfare benefits, which do not arise following a personal injury, but not for the fraudulent devaluation of worker’s compensation benefits, solely because the latter do. A plaintiff could recover for the loss of a cause of action for wrongful termination, but not for the loss of a cause of action for wrongful death. Nothing in the text of RICO evinces an intent by Congress to draw such arbitrary distinctions among property interests, nor do we find any support for the exclusion of these claims from the protections of RICO. Such an approach is incompatible with RICO because it qualifies the term “property” without a basis to do so in the RICO statute. See Reiter, 442 U.S. at 338-39, 99 S.Ct. 2326 (rejecting interpretation of “business or property” as “business or business property”). Classifying property injuries according to their origins creates untenable distinctions.
Moreover, to the extent the majority relies on the “flowing from” standard, it makes the same mistake that the district *581 court did by misconstruing the meaning of language from our sister circuits that “pecuniary losses flowing from [personal] injuries” are insufficient to establish injury to property. Evans, 434 F.3d at 930 (emphasis added); see also Grogan, 835 F.2d at 847. Neither of these cases involved an injury to an intervening legal entitlement. Both addressed whether various damages that were the proximate result of a personal injury caused by a RICO violation, albeit some more indirectly than others, could be deemed property interests on their own. Evans, 434 F.3d at 930 (lost wages from wrongful incarceration caused by alleged RICO violation not property); Grogan, 835 F.2d at 846-47 (economic losses from wrongful death caused by alleged RICO violation not property). I take no issue with their holdings that they could not. Evans even left open the possibility that a plaintiff might be able to “recover under RICO for loss of an employment opportunity” if “an employee is able to establish that he has been unlawfully deprived of a property right in promised or contracted[-]for wages.” 434 F.3d at 928. The Evans court did not say it would permit recovery for such a property deprivation only if the promise of wages did not arise following a physical injury at work. Such a scenario involving harm to an intervening legal entitlement, separating the physical injury from the downstream pecuniary losses, would be more factually analogous to this case than the actual facts of Evans are. Focusing on whether pecuniary losses “flowed”[7] in some way from a personal injury does not make sense in cases involving the devaluation of an actual legal entitlement as the result of an independent RICO fraud.
For these reasons, I would conclude that the devaluation or loss of a statutory entitlement is an injury to property within the meaning of RICO. Because Jackson alleged that he had started receiving worker’s compensation benefits under Michigan law prior to the defendants’ decision to terminate those benefits, it is undeniable that he has a statutory entitlement to these benefits. The majority is incorrect to distinguish this statutory entitlement from all others on the faulty reasoning that all injuries related to a personal injury are outside the scope of RICO. Likewise, Scharnitzke has alleged that he was denied fraudulently the nondiscretionary worker’s compensation benefits that he was due under Michigan law. That he could not have incurred these benefits but for a personal injury suffered at work does not change their legal status. Under longstanding principles, Jackson and Schar-nitzke have each alleged that they have suffered an injury to property.
II. SUPREMACY CLAUSE
The majority spends much time addressing its concern that allowing plaintiffs to bring civil RICO actions based on allegations of fraudulent denials and terminations of benefits would impair the WDCA’s regulatory scheme or the remedies set forth therein. Although the majority recognizes that Michigan cannot declare its regulatory scheme exclusive of federal remedies because of the Supremacy Clause, it nonetheless places undue significance on the nature of this scheme. *582 Specifically, the majority concludes that because Congress has not expressly stated its intent to allow for remedies supplemental to Michigan’s exclusive scheme and because civil RICO actions do not include “all torts,” the employees’ claims must fail. Maj. Op. at 568-69. The flaw with the majority’s arguments on these points, however, is that the predicate offense for the RICO action is mail fraud, not the denial of worker’s compensation or a personal injury. The fact that the majority refuses to recognize the correct predicate offense leads it to engage in a tangential analysis relating to principles not at issue on this case. For this reason, I will focus my analysis in this section on the basic principles of RICO predicate offenses and the supremacy of federal law.
“The gravamen of [a] RICO cause of action is not the violation of state law, but rather certain conduct, illegal under state law, which, when combined with an impact on commerce, constitutes a violation of federal law. Therefore, it is not alleged that [the defendants are] subject to ‘liability under’ [state law]; their liability ... stems from RICO.” Williams v. Stone, 109 F.3d 890, 895 (3d Cir.), cert. denied, 522 U.S. 956, 118 S.Ct. 383, 139 L.Ed.2d 299 (1997). Under the Supremacy Clause, “the relative importance to the State of its own law is not material” when “a valid federal law” provides a cause of action based on overlapping facts. Ridgway v. Ridgway, 454 U.S. 46, 54, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981) (internal quotation marks and alteration marks omitted).
Although RICO’s predicate of mail fraud is similar to the underlying fraud that affects a state-recognized interest, mail fraud is a distinct offense. Due to the Supremacy Clause, as recognized by the majority, Michigan does not have the authority to declare a state remedy exclusive of federal remedies.[8] See U.S. Const, art. VI, cl. 2; Roberts v. Roadway Express, Inc., 149 F.3d 1098, 1105 (10th Cir.1998) (“If Roadway means to argue that Colorado’s Workers’ Compensation Act provides the exclusive remedy for all work-related injuries including emotional distress caused by violations of the civil rights laws, that argument is readily disposed of by the Supremacy Clause.”); Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1190 (2d Cir.1987) (“New York’s Workers’ Compensation Law might bar plaintiffs state common-law claim ... [, but] we do not read the workers’ compensation law to deny relief under a federal statute. Were state law to erect such a bar, it would clearly run afoul of the Supremacy Clause....”) (internal citations omitted). State law can eliminate federal remedies only when authorized by reverse-preemption clauses, such as the one contained in the McCarran-Ferguson Act, which played a role in our court’s decision in Brown v. Cassens Transport Co., 546 F.3d 347, 357 (6th Cir.2008).
Admittedly, the employees are entitled to damages for the alleged fraud only if they were actually entitled to worker’s compensation and were not properly compensated, which is a question of state law. But this fact shows an overlap in sane- *583 tioned conduct, not a dependency relationship between state and federal law. It is well established that “[t]he fact that a scheme may violate state laws does not exclude it from the proscriptions of the federal mail fraud statute.” Parr v. United States, 363 U.S. 370, 389, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960). It follows that mail fraud is still criminal even when the existence of fraud varies according to whether a state prohibits conduct or whether it affords entitlements.[9] United States v. Blandford, 33 F.3d 685, 702 (6th Cir.1994) (affirming a mail-fraud conviction by distinguishing a case with identical conduct because one state proscribed the defendant’s action while the other state did not), cert. denied, 514 U.S. 1095, 115 S.Ct. 1821, 131 L.Ed.2d 743 (1995). Thus, mail fraud is a sanctionable offense even when it resembles a state tort. For these same reasons, this court has jurisdiction over the federal civil RICO claim even if the Michigan courts would not hear a claim for worker’s compensation. A federal civil RICO claim and a state claim for worker’s compensation are legally distinct, even though they share factual underpinnings.
Relatedly, it is important to note that contrary to the majority’s assertions otherwise, recent Michigan decisions acknowledge that the Workers’ Compensation Agency (“WCA”) is not equipped to adjudicate claims similar to those that sound in RICO, as it has limited authority with respect to the availability of certain types of relief and limited expertise concerning allegations based in fraud. A recent Michigan Court of Appeals decision detailed certain of these limitations: “It is not disputed that the WCA does not have the requisite statutory authority to hear a class action claim. Similarly, the WCA does not have authority to grant equitable relief.” A & D Dev. v. Michigan Commercial Ins. Mut., No. 301296, 2012 WL 639334, at *3 (Mich.Ct.App. Feb. 28, 2012); see also Milton v. Cnty. of Oakland, 50 Mich.App. 279, 213 N.W.2d 250, 252 (1973) (“Our courts have found the exclusive-remedy bar inapplicable when the challenged injury ... is not compensable under the act.”); cf. U.S. Fidelity & Guar. Co. v. Lee Invs. LLC, 641 F.3d 1126, 1135 (9th Cir.2011) (“This limitation is consistent with the constant theme generally applicable to administrative agencies: that they are creatures of statute, bound to the confínes of the statute that created them, and lack the inherent equitable powers that courts possess.”). The Michigan Court of Appeals also explained that “the WCA does not have experience with resolving allegations of fraud.” A & D Dev., 2012 WL 639334, at *4. In other words, given the limited statutory authority and expertise of the WCA, there is no danger of encroachment or a significant overlap when a plaintiff alleges a civil RICO violation against his private employer.
Finally, I must note that I cannot agree with the majority’s application of the clear-statement rule to this case. Relying heavily on Gregory v. Ashcroft, 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991), a case involving age-discrimination claims, the majority makes the erroneous assumption that the clear-statement rule would even apply in this context. Importantly, the majority does not reconcile its position in interpreting RICO narrowly under the clear-statement rule with the Supreme Court’s clear instruction to interpret RICO broadly, a standard that the *584 majority acknowledges in earlier sections of its opinion. As I have explained in greater detail above, because Congress has spoken clearly on the broad scope of civil RICO claims and because the predicate offense at issue is one that has been recognized time and again as within the scope of RICO, I cannot agree with the majority’s determination that allowing the employees’ suit to go forward would unduly encroach on Michigan’s regulatory scheme or would expand the limits of RICO.
III. CONCLUSION
For the reasons stated above, I would reverse the decision of the district court and hold that the employees have stated a claim under RICO.

. The majority cryptically refers to statutory standing in its footnote 2. In light of the majority’s failure to articulate or apply any principles relating to standing, this dissent focuses on the majority’s holding that the plaintiffs failed to allege a claim of injury to their business or property.

. Michigan often looks to federal due process law in analyzing whether property interests are at stake. Williams, 424 N.W.2d at 282, 283 n. 16 (relying on federal due process law articulated in Logan, 455 U.S. at 428, 102 S.Ct. 1148).

. "The Supreme Court has repeatedly reserved decision on the question of whether applicants for benefits (in contradistinction to current recipients of benefits) possess a property interest protected by the Due Process Clause.” Kapps v. Wing, 404 F.3d 105, 115 (2d Cir.2005). Nevertheless, "the Supreme Court’s procedural due process jurisprudence focuses on whether statutory provisions create a right, not whether benefits have been received in the past.” Mallette, 91 F.3d at 640 (citing Roth, 408 U.S. at 577, 92 S.Ct. 2701). “[T]he potential consequences of de *576 nying ... benefits are no less potentially dire than those of revoking them.” Id.

. Otherwise a party could never be denied benefits, even for proper grounds, which is clearly not the case. The ability of an employer to dispute an otherwise nondiscretion-aiy claim of benefits, and such employer’s potential success, impacts only the value of the employee’s claim to benefits, not the determination that such an expectancy of benefits is the employee’s property in the first place.

. I would also note that Michigan has recognized a properly interest in a party’s cause of action before the WDCA. Michigan law describes a cause of action for worker's compensation as a "species of property" — for both the plaintiff and the defendant. Williams, 424 N.W.2d at 282, 283 & n. 16 (citing Logan, 455 U.S. at 428, 102 S.Ct. 1148). Specifically, Michigan has explained that a party has a property interest in a work *578 er's compensation cause of action such that a failure to afford a party adequate process in such a proceeding injured its property. A claim based on deception before the WCAC that deprived a party of the ability to assert his or her claim for benefits under the statute in a fair forum would therefore constitute an injury to property under RICO. And as discussed throughout, I see no reason to exclude injuries to causes of action, which are indisputably injuries to property, from the category identified by Congress as "property” in RICO.

. However, there is some inconsistency among courts when the injuiy claimed as a result of the RICO violation includes lost wages, but this is in part because some states do recognize a legal entitlement to employment opportunities. Compare Diaz v. Gates, 420 F.3d 897, 900 (9th Cir.2005) (en banc) (lost wages from wrongful death caused by RICO violation may be properly pleaded as a property interest given California law), with Evans, 434 F.3d at 930-31 (lost wages from wrongful incarceration caused by RICO violation not property interest given Illinois law).

. Additionally, I am concerned that the language "flowing from” is vague. It certainly cannot require dismissal of any civil RICO claim that can be traced to a personal injury, as even Grogan concedes: "Without ruling on hypothetical cases, we can conceive of inju-ríes resulting from murder for which recovery would be possible that do not involve issues such as loss of earnings and loss of support that are part of many personal injury claims.” 835 F.2d at 848.

. The WDCA purports to make "[t]he right to the recovery of benefits” under the WDCA "the employee’s exclusive remedy against the employer for a personal injury or occupational disease,” with the sole exception of "intentional tort[s].” Mich. Comp. Laws § 418.131(1). However, even Michigan recognizes the limitations on its exclusivity provision. See, e.g., Napier v. Jacobs, 145 Mich.App. 285, 377 N.W.2d 879, 887 (1985) ("Similarly, state courts may not discriminate against federal causes of action and the defense of the exclusivity provision would nullify the right to proceed with a federal remedy for alleged constitutional rights violations.”), rev'd on other grounds, 429 Mich, 222, 414 N.W.2d 862 (1987).

. State law is not the exclusive source for defining fraudulent activity. Langford v. Rite Aid of Ala., Inc., 231 F.3d 1308, 1313 (11th Cir.2000) ("[T]he fact that no duty ... can be located in analogous [state] cases does not mean that no such duty can be located in federal law.”).